# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THE RICHARD AND SHEILA J. MCKNIGHT 2000 FAMILY TRUST et al., <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM J. BARKETT et al., <br><br> Defendants. | 2:10-cv-01617-RCJ-GWF <br><br> **ORDER** |

This case arises out of the same facts as Case No. 2:07-cv-892 (the "USA Commercial Case"). Five motions are pending before the Court. For the reasons given herein, the Court denies Defendants' motion to reconsider, grants their motion to dismiss as to the second claim for declaratory judgment, grants the motions to intervene, and grants Plaintiffs' motion for offensive summary judgment as to the first claim for breach of guaranty.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Richard McKnight,[1] as trustee for The Richard & Sheila J. McKnight 2000 Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1). The McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

---

[1] Richard McKnight is apparently both a beneficiary and the trustee of the McKnight Trust and one of the McKnight Trust's attorneys in this action.

Plaintiffs sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. Barkett, Castaic I, Castaic II, and Castaic III filed suit in state court in California against the direct lenders in the Castaic loans for breach of contract and other claims (the "California Case"). Plaintiffs moved to transfer the present case from the Hon. Gloria M. Navarro to this Court, and Judge Navarro granted the motion. Defendants have filed a motion to reconsider the transfer and have also moved to dismiss. Some of the other direct lenders in the Castaic III loan have moved to intervene, with Attorney Lisa Rasmussen (one of the plaintiffs' attorneys in the USA Commercial Case), and they request permission to add claims against Castaic and Castaic II. Two trustees of the T&C Kapp Family Trust ("the Kapp Trust") have separately moved to intervene. Finally, Plaintiffs have moved for offensive summary judgment on both claims.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(2)

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[2]

---

[2] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal

1     There are two categories of personal jurisdiction: general jurisdiction and specific
2 jurisdiction.  General jurisdiction exists over a defendant who has "substantial" or "continuous
3 and systematic" contacts with the forum state such that the assertion of personal jurisdiction over
4 him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v.*
5 *R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales*
6 *de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  A state court has general jurisdiction over
7 the state's own residents, for example.

8     Even where there is no general jurisdiction over a defendant, specific jurisdiction exists
9 when there are sufficient minimal contacts with the forum such that the assertion of personal
10 jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*
11 *Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)
12 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The standard has been restated using
13 different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each
14 case that there be some act by which the defendant purposefully avails itself of the privilege of
15 conducting activities within the forum State, thus invoking the benefits and protections of its
16 laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444

---

clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009).  Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993).  During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))). From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The "purposeful direction" option of the first prong uses the "*Calder-*effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). The third prong is itself a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in

>adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

A defendant waives objection to personal jurisdiction and venue by agreeing to a contractual forum-selection clause. *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). "Federal law governs the validity of a forum selection clause." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). "Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.d 509, 514 (9th Cir. 1988) (quoting *M/S Bremen*, 407 U.S. at 15). The exception to enforcement is narrow and exists only where the forum selection clause is procured by fraud, undue influence, or overweening bargaining power, where the forum is so gravely difficult and inconvenient that it is essentially no forum at all, or where enforcement of the clause would contravene a strong public policy of the forum. *Argueta*, 87 F.3d at 325.

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the

defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**C.     Rule 56(a)**

A court must grant summary judgment when "the movant shows that there is no genuine

1 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
2 Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson*
3 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if
4 there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*
5 *id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported
6 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary
7 judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

11 *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)
12 (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears
13 the burden of proving the claim or defense, the moving party can meet its burden in two ways:
14 (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2)
15 by demonstrating that the nonmoving party failed to make a showing sufficient to establish an
16 element essential to that party's case on which that party will bear the burden of proof at trial.
17 *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden,
18 summary judgment must be denied and the court need not consider the nonmoving party's
19 evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).
20     If the moving party meets its initial burden, the burden then shifts to the opposing party
21 to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*
22 *Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
23 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
24 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
25 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

1   626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment
2   by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*
3   *List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions
4   and allegations of the pleadings and set forth specific facts by producing competent evidence that
5   shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.
6        At the summary judgment stage, a court's function is not to weigh the evidence and
7   determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
8   U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are
9   to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely
10  colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.
11      **D.**    **Rule 24**
12       "On timely motion, the court may permit anyone to intervene who . . . has a claim or
13  defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.
14  24(b)(1)(B). "We consider three criteria in determining whether a motion to intervene is timely:
15  (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason
16  for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836
17  (9th Cir. 1996).
18  **III.**    **ANALYSIS**
19      **A.**    **Motion to Reconsider Transfer (ECF No. 16)**
20       After Defendants filed the present motion to dismiss, but before any of the other pending
21  motions were filed, Plaintiffs moved for the Court to transfer the case from Judge Navarro to this
22  Court based on the nearly total overlap of the facts of the case with the USA Commercial Case
23  and this Court's order of June 8, 2010 ("the Castaic Order") in the *In re Asset Resolution,*
24  *LLC* consolidated Chapter 7 bankruptcy case ("the Bankruptcy Case") that arose out of the USA
25  Commercial Case and which is also pending in this Court, the reference having been withdrawn.

The interpretation of the Castaic Order bears directly and perhaps dispositively on the present case. (*See* Mot. Trans., Nov. 4, 2010, ECF No. 10). Judge Navarro granted the order before a response was due. (*See* Order, Nov. 9, 2010, ECF No. 12). Defendants argue that this denied them of their constitutional right to be heard; however, Defendants also admit that the motion to transfer is moot because the real issue, they argue, is whether the present case should proceed at all. Defendants admit in the motion that it does not matter to them which judge of this District rules on the motion to dismiss. Even assuming the ruling was premature, it is unclear why Defendants have asked the Court to reconsider a motion they admit is both moot and non-prejudicial. Because the Court will rule on the motion to dismiss directly, it denies the motion for reconsideration as moot.

### B. Motion to Dismiss (ECF No. 7) and Motion for Summary Judgment (ECF No. 27)

Defendants note that on January 12, 2010 they, along with Castaic and Castaic II, filed a suit for breach of contract and declaratory judgment against all direct lenders of all three Castaic loans in the Los Angeles County Superior Court. Plaintiffs are therefore among the defendants in the California Case. After removal to the U.S. District Court of the Central District of California, that court remanded to state court (based on improper removal procedure, not lack of subject matter jurisdiction). Defendants ask the Court to dismiss the present case for five reasons: (1) lack of personal jurisdiction; (2) improper venue; (3) *Colorado River* abstention; and (4)–(5) failure to state a claim. Plaintiffs have moved for offensive summary judgment on both claims.

#### 1. Personal Jurisdiction and Venue

Defendants argue that the only allegation of any contact between any Defendant and Nevada in the Complaint is that an unidentified agent of Castaic III signed the Castaic III loan document in Nevada. (*See* Compl. ¶ 11). Defendants also argue that they did not solicit Plaintiffs in Nevada, but that Plaintiffs solicited Defendants in California. Defendants note that

1  the properties are located in California and that the loans were serviced in California.

2  Plaintiff responds that Barkett himself signed the Castaic III loan agreement in Nevada
3  on behalf of Castaic III, as the evidence shows. (*See* Promissory Note, Sept. 22, 2005, ECF No.
4  11-2, at 9). Plaintiff then notes that in any case there is a non-exclusive forum-selection clause
5  in favor of Clark County, Nevada in the Castaic loan agreement. (*See id.* ¶ 18(b)). Barkett
6  signed a "First Amendment" (the "Guaranty") as a guarantor of the loan to Castaic III on
7  February 13, 2006 on behalf of himself, Castaic, and Castaic II. (*See* First Am., Feb. 13, 2006,
8  ECF No. 11-2, at 18).[3] The non-exclusive forum selection clause in the Castaic III loan
9  agreement applies to any other related loan documents. (*See* Promissory Note ¶ 18(b)).
10 Therefore, the Court has personal jurisdiction over Defendants, and venue also lies in Nevada.
11 Defendants do not argue that the forum-selection clause is invalid but argue under due process
12 standards generally, as if they were unaware of the forum-selection clause.

13      **2.     *Colorado River***

14  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) involved
15 parallel state and federal proceedings concerning water rights in Colorado. The United States
16 filed suit in federal court to secure its rights to certain water as against approximately 1000
17 individual users. One of the defendants in the federal action then filed a parallel suit in state
18 court, and several other defendants filed a motion to dismiss the federal action for lack of
19 jurisdiction. The district court granted the motion. The Supreme Court found that jurisdiction
20 was not lacking and abstention was inappropriate but nevertheless ruled that dismissal was
21 appropriate based on the need to avoid duplicative litigation and "(w)ise judicial administration,
22 giving regard to conservation of judicial resources and comprehensive disposition of litigation."
23 *Id.* at 817. The case was anomalous because it permitted a federal court to dismiss a case over
24 which it in fact had jurisdiction and where abstention was not appropriate. *See Colorado River*,

25

---

[3]This document was actually an affirmation of a previous guaranty. (*See id.* ¶ F.7).

424 U.S. at 821–26 (Stewart, J., dissenting). Even the majority noted that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (citation and internal quotation marks omitted). Moreover, *Colorado River* is tightly fact-bound to the water-rights context. *See Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 571 (1983) (noting that "water rights adjudication is a virtually unique type of proceeding"); *id.* at 572 (Marshall, J., dissenting) (noting that the *Colorado River* doctrine "govern[s] controversies involving federal water rights"). If the Supreme Court were able to issue orders without publishing them, as the Courts of Appeals often do, it likely would have done so in *Colorado River*. And even assuming the Court intended a broader application, the *Colorado River* doctrine is not based on considerations of federal-state comity, as is often argued by litigants attempting to avoid federal court, but rather is designed to increase the overall efficiency of related litigation in federal and state courts overall. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15 (1983). The factors to consider include the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which the competing fora obtained jurisdiction. *Id.* at 15 (citing *Colorado River*, 424 U.S. at 818–19). The decision is "highly weighted in favor of the exercise of jurisdiction." *Id.* at 16.

    The doctrine does not support declining jurisdiction in the present case. Adjudication in this Court would not encourage piecemeal litigation. On the contrary, the present case is related to several bankruptcy cases and "related-to" Article III cases that have been pending in this Court for several years, the facts and procedural history of which this Court, and only this Court, is intimately acquainted. Adding the California trial (and eventually appellate) courts into the mix could not possibly centralize or increase the overall efficiency of the litigation. Defendants note that the California Case was filed before the present case, but they fail to note the mountain

of related litigation already pending for several years in this Court.

### 3. The Merits

#### a. Illegal Contract

Defendants argue that certain California laws make the Castaic III loan agreement and the Guaranty illegal. But the Castaic III loan agreement includes a choice-of-law clause in favor of the substantive law of Nevada. (*See* Promissory Note ¶ 18(a)). Defendants argue as if they were unaware of the choice-of-law clause.

#### b. The Castaic Order

Defendants argue that the second claim for declaratory judgment fails to state a claim. The second claim consists of a single substantive sentence: "The court should declare that Barkett and Castaic III having failed to file a claim as provided by Judge Jones order of June 8, 2010, have waived all claims such as those made in [the California Case]." (Compl. ¶ 25). In the Castaic Order, the Court ruled that the owners of more than 51% of the interests in the Castaic loans had voted to assume the servicing rights, and the Court therefore directed the Trustee to deliver all original records to Cross FLS, LLC, which entity the direct lenders of the Castaic loans had selected as the new servicer. (*See* Order 2, June 8, 2010, ECF No. 1, at 7). The Court then ordered:

> As to each loan, the Trustee shall provide notice of the entry of this order to each person or entity known by the Trustee to assert a claim arising on or before the date of this order and against any Loan that is the subject of this order. Such a person or entity is referred to in this order as a "Claimant."
>
> Any Claimant shall within 30 days of entry of this order, deliver to Cross a statement of its claim, together with substantiating documentation therefore, in substantially the form of a bankruptcy Proof of Claim – (Official Form B10). Any claim not asserted within such 30 days shall thereafter be barred.

(*Id.*) The Castaic Order goes on to explain how such claims would be resolved. (*See id.* 2–3). Plaintiffs have asked the Court to declare that Defendants' failure to bring such a claim as directed in the Castaic Order resulted in waiver of any such claim, and that Defendants cannot

avoid the Court's ruling by bringing the California Case. Defendants argue that Plaintiffs fail to state a claim because the California Case does not involve anything that constitutes a "claim" under the Castaic Order. Defendants note that the Court issued the Castaic Order in its capacity as a bankruptcy court, and that the Castaic Order therefore cannot constitutionally have any preclusive effect on common law contract claims but only on rights created by the bankruptcy laws. They note that none of them are parties or creditors in the Bankruptcy Case and that the resolution of the California Case, which involves common law claims by the Castiac entities against the direct lenders, will not have any effect on the bankruptcy estates in the Bankruptcy Case.

Defendants are correct that their common law claims are not precluded by the Castaic Order, but a common law claim against a direct lender in a Castaic loan in the California Case could still have a conceivable effect on Asset Resolution's bankruptcy estate, because if the plaintiffs in the California case obtain a judgment against one or more direct lenders, those direct lenders' liability may be derivative of or in conjunction with Asset Resolution's, and the direct lenders would then have claims for contribution or equitable indemnity against Asset Resolution itself. In fact, Defendants themselves note that Compass, Silar, and USA Commercial are co-defendants with the direct lenders in the California Case, and this Court has already entered judgment in its capacity as an Article III court in the USA Commercial Case that Asset Resolution is liable for those entities' wrongdoing with respect to the loans. Defendants argue as if they are not aware of this, which they likely are not, and through no fault of their own—the hydra of litigation growing out of the USA Commercial affair is exceedingly complex.

The Court will dismiss the second cause of action, however, because it would have original jurisdiction, but does not have exclusive jurisdiction, over the "related to" claims raised in the California Case. *See* 28 U.S.C. § 1334(b). Plaintiffs ask the Court to declare Defendants' claims in the California Case res judicata because of the Castaic Order. The claims are not res

judicata. As Defendants correctly note, the claims in the California Case are common law claims, not creditors' claims in bankruptcy governed by the Castaic Order. Still, because the resolution of the claims in the California Case, as well as the first claim for breach of guaranty in the present case, could have a conceivable effect on the Bankruptcy Case, they are "related to" claims over which this Court has jurisdiction. *See id.* This Court and the California court may therefore simultaneously adjudicate the similar claims, and the first ruling will be preclusive on the other court. Also, there is no claim-splitting problem, because Plaintiffs in the present case are neither plaintiffs nor counter-plaintiffs as to the same claims in the California Case.

This leaves Plaintiffs' motion for offensive summary judgment as to the breach of guaranty claim, which is brought only against Barkett. As already recounted, Barkett signed the Castaic III loan agreement on behalf of Castaic III and signed the Guaranty on behalf of himself, Castaic, and Castaic II. Plaintiff seeks $100,000 (the amount of the McKnight Trust's loan to Castaic III), as well as interest, late fees, and attorney's fees and costs. Plaintiffs have met their initial burden by presentation of the Guaranty, which is signed by Burkett and appears otherwise valid and enforceable. (*See* First Am., Feb. 13, 2006, ECF No. 11-2, at 18). Defendants have not met their shifted burden, having rested their entire response on lack of personal jurisdiction and venue, as well as illegality of the loan and Guaranty under California law that does not apply.

### C.   Motions to Intervene (ECF Nos. 24, 33)

Two groups ask to intervene under Rule 20(a). The appropriate rule to invoke is Rule 24, and the Court will permit permissive intervention under Rule 24(b)(1)(B). The first group of Intervenors consists of 172 direct lenders[4] of the Castaic, Castaic II, and Castaic III loans. This group refers to the Castaic loan as "Tapia Ranch." The second group of Intervenors consists of two trustees of The Kapp Trust. It is clear that Intervenors seek to pursue breach of guaranty claims against Barkett as to the Castaic loans. The Court will permit intervention because there

---

[4]Spouses are counted as a single party.

are common questions of law and fact between Intervenors' putative claims and Plaintiffs' claims.  The case is still in the pretrial stage, there does not appear to be any bad faith in the delay, and Defendants will not be prejudiced so long as they are given any extra discovery necessary to defend against Intervenors.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Reconsider (ECF No. 16) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 7) is GRANTED in part and DENIED it in part.  The second claim for declaratory judgment is dismissed.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 27) is GRANTED in part and DENIED it in part.  The Court grants summary judgment to Plaintiffs on the breach of guaranty claim against Barkett.

IT IS FURTHER ORDERED that the Motions to Intervene (ECF Nos. 24, 33) are GRANTED.

IT IS FURTHER ORDERED that the Clerk will enter judgment in favor of Plaintiffs against Barkett as to the breach of guaranty claim and in favor of Defendants as to the declaratory judgment claim but will keep the case open pending resolution of Intervenors' claims.

IT IS SO ORDERED.

Dated this 26th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge