# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

THE RICHARD AND SHEILA J. MCKNIGHT 2000 FAMILY TRUST et al.,

        Plaintiffs,

vs.

WILLIAM J. BARKETT et al.,

        Defendants.

2:10-cv-01617-RCJ-GWF

**ORDER**

This case arises out of the same facts as the USA Commercial case. The Court previously invited cross motions for summary judgment as to which parties currently held the beneficial interests in the three Castaic loans and guaranties. Pending before the Court are two motions for summary judgment.[1] For the reasons given herein, the Court will address the motions as against the newly filed Counterclaim and will grant them in part and deny them in part.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Richard McKnight,[2] as trustee for The Richard & Sheila J. McKnight 2000 Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that

---

[1] The Motions are ECF Nos. 137 and 147. Motion No. 148, although entered into the docket as a separate motion for summary judgment, is the memorandum of points and authorities for Motion No. 147.

[2] Richard McKnight is a apparently both a beneficiary and the trustee of the McKnight Trust and one of the McKnight Trust's attorneys in this action.

various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1). The McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. The Court previously denied a motion to reconsider transfer of the case from the Hon. Gloria M. Navarro to this Court, dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II"). Defendants have appealed the judgment against them as to breach of guaranty.

Each group of intervenors has filed its own complaint in intervention. Intervenor Plaintiffs Thomas J. Kapp and Cynthia S. Roher, as trustees of the T&C Kapp Family Trust (the "Kapp Intervenors" or "Kapp") filed a complaint in intervention (the "Kapp CI") against Barkett and Castaic II for breach of contract, breach of guaranty, and declaratory judgment. (*See* Kapp CI, May 12, 2011, ECF No. 34). A second group of intervenors (the "Rasmussen Intervenors") have filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61). The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned the Castaic entities. (*See id.* ¶¶ 5, 67–69). A third group of intervenors, DACA-Castaic, LLC and Debt Acquisition Co. of America V, LLC ("DACA V"), withdrew its motion to intervene.

The Court granted a motion to dismiss the Kapp CI in part, dismissing the declaratory judgment claim but refusing to dismiss the breach of contract and breach of guaranty claims. Defendants argued that Kapp Intervenors had transferred their interests in the relevant loans to

DACA-Castaic, LLC and thus no longer had standing to sue for breach of contract or breach of guaranty. The Kapp Intervenors responded that they had only transferred the deeds of trust, not the beneficial interest. The Court invited summary judgment motions on the issue but refused to dismiss because the Kapp CI was sufficiently pled. The Court completely denied a motion to dismiss the Rasmussen CI, noting that the claim for declaratory relief thereunder was different from the declaratory relief claims in the Complaint and the Kapp CI that the Court had dismissed. The Court struck Defendants' "crossclaim," which was in reality a third-party complaint and/or a counterclaim, directing Defendants to refile the pleading properly, which they have now done. (*See* Countercl. and Third-Party Compl., ECF Nos. 156, 157). The Court refused to stay the judgment against Defendants in favor of the McKnight Trust but noted that it would await summary judgment motions as to whether certain Intervenor Plaintiffs still owned the beneficial interest in the loans or had transferred them to DACA-Castaic, LLC or other parties. Two such summary judgment motions are now pending before the Court.

## II.   LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

  **A.    DACA's Motion (ECF No. 137)**

DACA-Castaic and DACA V (collectively, "DACA") have moved for defensive summary judgment against Barkett's Crossclaim (ECF No. 90) and for offensive summary judgment on its own Counterclaim (ECF No. 100) to that now-stricken "crossclaim." (*See* ECF No. 137). DACA's very presence as a party in this case is procedurally complex. Initially, DACA moved to intervene and file its own complaint in intervention against Defendants. (*See* ECF No. 63). However, when Defendants filed their now-stricken "crossclaim" against DACA, DACA filed its Counterclaim (ECF No. 100) against Defendants and withdrew its motion to intervene, because it had been pulled into the case procedurally as a "cross-defendant." (*See* ECF No. 101). But when the Court struck Defendants' "crossclaim," DACA was no longer a party to the case, so its motion for summary judgment, like its Counterclaim itself, is technically moot.

After DACA filed its motion for summary judgment, however, Defendants filed the Counterclaim and Third-Party Complaint (ECF Nos. 156, 157), as the Court had suggested, joining DACA as Counterdefendants. DACA is therefore properly back in the case, and the Court will for the purposes of efficiency consider DACA's present motion as against the Counterclaim (ECF No. 156), though the motion does not address most of the counterclaims therein. In the Counterclaim, Defendants allege that DACA has produced documents showing that the direct lenders in the Castaic loans transferred their beneficial interests in the loans, deeds of trust, and guaranties to DACA-Castaic. (*See* Countercl. ¶¶ 75–78, Jan. 13, 2012, ECF No. 156). The McKnight Trust has denied transferring any of its interest to DACA-Castaic, and the Kapp and Rasmussen Intervenors also claim to retain beneficial interests in the loans and guaranties, which is why they filed their respective complaints in intervention. (*See id.* ¶ 79). Counterplaintiffs also allege that DACA-Castaic cannot own the Castaic properties because the

1  direct lender Intervenors never transferred their interests to DACA-Castaic in accordance with

2  California law. (*See id.* ¶¶ 81–83). In any case, Defendants want the Court to sort out who owns

3  the beneficial interests in the Castaic properties, because only those entities will have standing to

4  sue for breach of contract or breach of guaranty. Defendants have sued Counterdefendants and

5  Third-party Defendants for: (1) breach of contract; (2) declaratory relief; (3) interference with

6  prospective economic advantage; (4) usury; (5) breach of fiduciary duty (Compass Financial and

7  Compass FP only); (6) unjust enrichment; and (7) slander of title. The Court will consider

8  DACA's motion as one for defensive summary judgment as against the second and fourth

9  counterclaims.

10  DACA notes that the Castaic, Castaic II, and Castaic III loans were made by USA

11  Commercial in respective principal amounts of $22 million, $5.6 million, and $4.675 million, as

12  amended, and that the loans had over 200 direct lenders when the last amendment was recorded

13  in 2006. (*See* DACA Summ. J. Mem. 2, ECF No. 151). These interest-only loans matured in

14  2007 and are now all in default. (*See id.* 2–3). In August 2007, Compass FP, LLC as servicer

15  filed three separate lawsuits against Barkett in California to enforce the guaranties on the three

16  loans. (*Id.* 3). In October 2007, Compass filed notices of default and began nonjudicial

17  foreclosure proceedings. (*Id.*). Compass and Barkett stipulated to dismissal of the lawsuits, but

18  the nonjudicial foreclosures remain pending. (*Id.*). In January 2010, Barkett sued the direct

19  lenders in California for $70 million based upon USA Commercial's loan servicing malfeasance

20  with respect to the Castaic loans. (*Id.*). That action remains pending, though the parties indicated

21  at oral argument that it was stayed. (*Id.*).

22  In the Spring of 2010, direct lenders representing a majority of the interests in each of the

23  Castaic loans elected Cross, FLS, LLC ("Cross") as the loan servicer via agreements entitled

24  "Majority Administration and Cooperation Agreement" (the "MAC Agreements"), appointing

25  Cross as the attorney-in-fact for owning, holding, assigning, selling, foreclosing, etc. the loans.

(*See id.*).  This Court approved the appointment of Cross pursuant to the vote in the Asset Resolution bankruptcy case. (*Id.* 3–4).  In the Spring of 2011, Cross negotiated an agreement with DACA V to pay the delinquent property taxes on the Castaic properties and enforce the loans; the agreement, entitled "Agreement to Purchase Loan Interests" (the "Purchase Agreement"), was subject to approval by the direct lenders. (*See id.* 4).  The proposed joint venture was to create the entity known as DACA-Castaic, which has two members: (1) DACA V; and (2) Castaic Investors, LLC, an entity formed by the direct lenders to hold their membership interests in the joint venture. (*Id.*).  Under the Purchase Agreement, Cross was to assign the interest in the Castaic loans and deeds of trust to DACA-Castaic pursuant to his powers of attorney under the MAC Agreements and Chapter 645B (Nevada's statutory "51% rule").  Under the Purchase Agreement, DACA V was to loan DACA-Castaic up to $3.2 million to pay the delinquent property taxes on the Castaic properties. (*Id.*).  More than 51% of the direct lender interests approved the Purchase Agreement. (*Id.* 5).  Cross recorded the assignment of the Castaic deeds of trust to DACA-Castaic. (*Id.*).  DACA V paid Cross $145,000 at closing, representing fees owed under the MAC Agreements. (*Id.*).  DACA V paid Castaic Investors, LLC $200,000, which has been used only for the administrative costs of the LLC and to retain an attorney for the LLC, Attorney Rasmussen, who represents Castaic Investors, LLC and many direct lenders. (*Id.*).

      DACA asks the Court to grant it summary judgment on thirteen issues under its counterclaim for declaratory relief: (1) that the Castaic loans are in default; (2) the amounts owing on each loan; (3) the validity and enforceability of the notes; (4) the validity and enforceability of the deeds of trust; (5) the pendency and propriety of the nonjudicial foreclosure proceedings; (6) that the Purchase Agreement was approved by a majority the interests in the loans, in compliance with Chapter 645B; (7) that Cross was authorized to perform under the Purchase Agreement; (8) that the Purchase Agreement binds all direct lenders; (9) that the

1  Castiac loans were validly assigned to DACA-Castaic, LLC; (10) that DACA-Castaic, LLC is
2  authorized to foreclose; (11) that DACA-Castaic may foreclose even if the Purchase Agreement
3  were void; (12) that advances for property taxes will be a first-priority lien; and (13) that the
4  Purchase Agreement is not invalid due to any failure to assign guaranty rights.

5       In response, Defendants adduce no evidence but argue that the assignments of deeds of
6  trust for the Castaic properties state that all beneficial interest under the deeds of trust, as well as
7  the notes and all rights thereunder are transferred to DACA-Castaic. Defendants do not argue
8  the thirteen points raised by movants, but rather focus on the point that there cannot be a double
9  recovery against them, i.e., that any direct lender who has transferred his interests to DACA-
10 Castaic cannot himself also recover based on those transferred interests, and that a direct lender
11 cannot recover against Barkett on a guaranty while DACA-Castaic also recovers against a
12 Castaic entity on the respective note.

13      Defendants are correct that the only issue upon which the Court specifically invited
14 summary judgment briefs was the double-recovery issue. DACA was still free to file its broader
15 motion, however.

16      As to the double recovery issue, it is clear that in California the transfer of the interest in
17 a promissory note effects the transfer of any attendant security interest in the debt such as a
18 mortgage or deed of trust as a matter of law. *See Ord v. McKee*, 5 Cal. 515, 516 (1855) ("A
19 mortgage is a mere incident to the debt which it secures, and follows the transfer of a note with
20 the full effect of a regular assignment."). That is, "the mortgage follows the note." No separate
21 statement assigning the security agreement is necessary. The same is true of a guaranty.
22 *Champion Home Builders Co. v. Sipes*, 269 Cal. Rptr. 75, 79 (Ct. App. 1990) ("The transfer of
23 the debt from Champion Credit to Champion included by operation of law the guaranty because
24 the transfer of a thing transfers the incidents." (footnote omitted)). Therefore, whichever direct
25 lenders assigned their fractional interests in the Castaic loans to DACA-Castaic (or to Castaic

1  Partners for later transfer to DACA-Castaic) also assigned their fractional interests in the deeds
2  of trust and the guaranties by operation of law. *See Ord*, 5 Cal. at 516; *Sipes*, 269 Cal. Rptr. at
3  79. The Court therefore rules that no direct lender who assigned his entire fractional interest in
4  any given note may sue on that note or on the respective guaranty, nor does he retain a fractional
5  interest in the security agreement.

6  Which direct lenders made such assignments remains a question of fact. Defendants
7  point to Exhibits 41 to 43 to DACA's withdrawn proposed complaint in interpleader. Those
8  exhibits are copies of March 7, 2011 assignments of "all beneficial interests under" the Castaic,
9  Castaic II, and Castiac III deeds of trust, respectively, from Castaic Partners, LLC to DACA-
10 Castaic, LLC. (*See* Exs. 41–43, at ECF No. 65-7, at 115–30). It is not clear, however, which
11 direct lenders had previously assigned their interests to Castiac Partners, LLC before this
12 assignment. The Court rules as a general matter, however, that no direct lender who has
13 assigned his interest in a loan to another party may recover separately on a guaranty of that loan.
14 The guaranty follows the note as a matter of law.

15 As for the thirteen points DACA asks the Court to decide, it is clear that the Castaic loans
16 are in default. No party appears to dispute this. The Court will not attempt to calculate the
17 amounts owing on each loan, but it will require proof of this at trial. Also, the court rules that
18 the notes were neither usurious nor subject to offset, *see infra*.

19 Next, The Court rules that the deeds of trust are enforceable under their terms via
20 nonjudicial foreclosure proceedings in California, and that the pending foreclosures based upon
21 the October 2007 notices of default against the Castaic properties are proper. Furthermore, an
22 action against a guarantor on such a note would not violate the single-action rule, because the
23 guarantor is not the target of a foreclosure. A plaintiff may obtain a judgment against a
24 guarantor for the full amount due on a guaranteed promissory note even after foreclosing the
25 property, though he may only ultimately collect to the extent of the deficiency after foreclosure.

1    Next, the Court rules that the Purchase Agreement was approved by majority interests in
2 the loans in compliance with Chapter 645B, that Cross was authorized to perform under the
3 Purchase Agreement, and that under Chapter 645B, Cross's actions under the Purchase
4 Agreement were legitimate. (*See* Order 2:10–17 in Case No. BK-S-09-32824-RCJ, June 8, 2010,
5 ECF No. 145-12, at 8). Although the majority could not transfer the minority's interest
6 involuntarily, it could elect to transfer its own interests, to service the loan, to foreclose, or to
7 otherwise manage the loan without the permission of minority interests.
8    Next, the Court rules that a majority interest in the Castaic loans were validly assigned to
9 DACA-Castaic, LLC and that DACA-Castaic's decision to foreclose on the Castaic properties
10 was therefore also valid. (*See* Exs. 41–43, at ECF No. 65-7, at 115–30). The Court will not rule,
11 as DACA asks it to, on the alternative question of whether it could have validly foreclosed even
12 if the Purchase Agreement were void.
13    Next, the Court will not rule that advances for property taxes on the Castaic properties
14 (paid by DACA-Castaic with its loan from DACA V) created a first-priority lien against the
15 Castaic properties. There is no indication of any case or controversy over this issue. This
16 appears to be a lien held against the Castaic properties by DACA V, enforceable if DACA-
17 Castaic does not repay the $3.2 million loan to DACA V. But DACA V has brought no claim
18 against DACA-Castaic in this case, and in fact those two entities have for the most part filed
19 joint pleadings, including their now-withdrawn proposed complaint in intervention. Nor does it
20 appear DACA V has brought any declaratory relief claim against other direct lenders. There is
21 simply no occasion to make the declaration movants request at this time.
22    Finally, the Court will rule that the Purchase Agreement is not invalid due to any failure
23 to assign guaranty rights. Nothing concerning any attempt to transfer or to avoid transfer of the
24 guaranty rights could have any affect on the validity of the assignment of the notes. But as
25 noted, *infra*, the guaranties followed the notes as a matter of law and would have followed the

notes in this case by their terms even in the absence of this rule of law. This is true regardless of whether the Purchase Agreement stated the intended result or not. If there was an intent to assign the beneficial interest in the debt and the Purchase Agreement was otherwise valid—both appear to be true here—then the assignee of the debt has the mortgage and the guaranties. *See infra.*

### B.     Kapp's Motion (ECF Nos. 147, 148)

The Kapp Intervenors have filed a motion for summary judgment similar to DACA's motion. They ask for defensive summary judgment against the now-stricken "crossclaim" and for offensive summary judgment on four points: (1) that the Castaic II loan is in default and that Barkett is liable to Kapp Intervenors on the Castaic II guaranty; (2) the amount owing on the Castaic II loan; (3) the validity and enforceability of the note; and (4) that the direct lenders' rights under the guaranties are enforceable after assignment of the notes and deeds of trust to DACA. The Court will rule on the present motion as against the newly filed Counterclaim (ECF No. 156).

First, the Court denies the motion on the fourth point. No direct lender who has assigned his interest in a loan has retained an interest in a respective deed of trust or guaranty. Those "incident" instruments follow the debt as a matter of law. *See Ord*, 5 Cal. at 516; *Sipes*, 269 Cal. Rptr. at 79. The Kapp Intervenors note that "a guaranty is a separate and independent obligation from that of the principal debt." *United Cent. Bank v. Superior Court*, 101 Cal. Rptr. 3d 395, 397 (Ct. App. 2009). But this statement of law has everything to do with a guarantor's obligation and nothing to do with a guarantee's right, i.e., whether the rights under a guaranty follow the assignment of a promissory note by operation of law. In *United Central Bank*, one party had signed guaranties for construction loans made to a separate borrower. *See id.* at 396. The loans were secured by deeds of trust against the borrower's real property, but the guaranties were not themselves secured. *Id.* When the borrower defaulted and the guarantor failed to honor the

guaranties, the creditor sued the guarantor for breach of guaranty and filed an application for a writ of attachment as to the *guarantor's* real property, which was not the property secured by the deed of trust. *See id.* The trial court denied the application because writs of attachment are inappropriate in cases where the subject debt is secured by real property. *See id.* The court of appeals reversed, because the trial court had plainly erred in finding that the guaranty was itself secured by the real property that secured the note. *See id.* at 397. The trial court had conflated the debtor's property that secured the debt with the guarantor's unrelated property that did not secure the debt but which was merely attachable as any other nonexempt piece of the guarantor's property to satisfy a money judgment on the guaranty. It was in that context that the California Court of Appeals stated, "A guaranty is a separate and independent obligation from that of the principal debt." *See id.* That is, just because debt is secured by a deed of trust does not mean that a guaranty of that debt is also secured by the deed of trust. None of this has anything whatever to do with the fact that a guaranty follows the assignment of the debt it secures by operation of law. There was no argument in *United Central Bank* that the plaintiff bank could still enforce the guaranty though it had assigned the note to a third party. *See id.* at 396. The plaintiff bank in that case had never assigned the note. *See id.*

The Kapp Intervenors note that the Castaic II guaranty contains a choice-of-law clause in favor of the substantive law of Nevada. They argue that under Nevada law, they may pursue their guaranty despite the fact that they have assigned away the note itself. The cases they cite do not support this proposition. In *First National Bank of Nevada v. Barengo*, a creditor sued a guarantor (without suing the borrowers or foreclosing the deed of trust) when the borrowers defaulted. *See* 536 P.2d 487, 487 (Nev. 1975). The trial court dismissed because the creditor had not exhausted the security, i.e., the deed of trust. *See id.* The Nevada Supreme Court ruled that the "one action rule" under Chapter 40, which operates to prevent both a lawsuit on a promissory note as well as foreclosure of the property, did not bar the creditor's action on the guaranty. *See*

*id.* The Court noted that the federal district court had already ruled similarly in finding that a creditor could sue a guarantor without first suing the debtor or foreclosing the security. *See id.* (citing *Coombs v. Heers*, 366 F. Supp. 851 (1973) (Foley, C.J.)). But these cases did not concern the question of whether a guaranty follows the assignment of a note by operation of law. They concerned only whether a person who holds a guaranty may enforce it without first pursuing the note or foreclosure. The Nevada Supreme Court does not appear to have directly ruled on the former question, but every jurisdiction to have done so appears to have ruled consistently with California that a guaranty, like a mortgage, follows the note. *See* 38 Am. Jur. 2d *Guaranty* § 24 (2011) (collecting cases). Finally, the Kapp Intervenors themselves note that the Castaic II guaranty itself provides that the guaranty follows the note. (*See* Castaic II Guaranty ("[E]ach and every immediate and successive assignee or transferee of any of the Security Documents or of any interest therein shall, to the extent of the interest of such assignee or transferee in the Obligations be entitled to the benefits of this Guaranty . . . .")). The Court denies summary judgment on this point.

Second, it does not appear that any party denies that the Castaic loans are in default. The Court will grant summary judgment on this uncontested point.

Third, the Court has already ruled Barkett is liable to the McKnight Trust on the Castaic III guaranty. The Kapp Intervenors ask the Court to rule that Barkett is liable to them on the Castaic II guaranty. There is no copy of the Castaic II guaranty attached to the Kapp CI. (*See* Kapp CI, July 29, 2011, ECF No. 54). Nor do the Kapp Intervenors attach it to their motion. The guaranty, however, is attached to DACA's motion, and it is signed by Barkett. (*See* Castaic II Guaranty, July 11, 2005, ECF No.145-3, at 5). It is clear that Barkett is liable on the Castaic II guaranty. The only remaining question is whether the Kapp Intervenors still own that guaranty or have assigned it to another entity. The Kapp Intervenors are Cynthia S. Roher and Thomas J. Kapp, as trustees for the T&C Kapp Family Trust (the "Kapp Trust"). (*See* Kapp CI).

1   They appear to assert that they retain their beneficial interest in the Castaic II loan, having

2   contributed $250,000 to the $5.6 million loan, and that they have not transferred their interest.

3   (*See generally* Kapp CI).  Barkett has adduced no evidence indicating that they have transferred

4   their interest in the Castaic II loan.  The Court will therefore grant summary judgment to the

5   Kapp Intervenors on Barkett's liability to them under the Castaic II guaranty.  Of course, if

6   Barkett can produce evidence showing that Kapp assigned its beneficial interest in the Castaic II

7   note, he will be entitled to relief from judgment under Rule 60(b).

8       Fourth, the Kapp Intervenors ask the Court to rule on the amount owing on the Castiac II

9   loan, and hence to them.  They argue that the total amount owed with non-default and default

10  interest was $16,961,898 as of December 31, 2011, accruing at $9264 per day thereafter, and that

11  the Kapp Intervenors' portion of this is $757,226.62 as of December 31, 2011, accruing at

12  $413.57 per day thereafter.  The Court will require the Kapp Intervenors to prove damages at

13  trial.

14      Fifth, the Kapp Intervenors ask the Court to rule on the validity and enforceability of the

15  note, specifically, that the note is not usurious, is not subject to offset, and that the direct lenders

16  are not liable for the misconduct of USA Commercial, Compass, or other servicers.  The Court

17  will grant this request in part.  The notes are by their terms to be interpreted under Nevada law,

18  (*see* Castaic II Note ¶ 18(a), July 11, 2005, ECF No. 145-2, at 6), and Nevada has had no usury

19  law since 1981, *see Shannon-Vail Five Inc. v. Bunch*, 270 F. 3d 1207, 1213 (9th Cir. 2001).

20  Also, the Castaic II note specifically notes that the borrower waives the right of offset. (*See id.*

21  ¶ 10).  But the Court will not rule at this time whether any direct lenders may be liable for the

22  misconduct of loan servicers.  It may be the case that certain direct lenders gave loan servicers

23  specific instructions to commit acts constituting torts or breaches of contract, or that they ratified

24  such acts.

25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that DACA's Motion for Summary Judgment (ECF No. 137) and Kapp's Motion for Summary Judgment (ECF Nos. 147, 148) are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 13th day of March, 2012.

_____
ROBERT C. JONES
United States District Judge