**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE RICHARD AND SHEILA J. MCKNIGHT 2000 FAMILY TRUST et al., <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM J. BARKETT et al., <br><br> Defendants. | 2:10-cv-01617-RCJ-GWF <br><br> **ORDER** |

This case arises out of the same facts as the USA Commercial case. Pending before the Court are motions to dismiss two separate Complaints in Intervention and a Counterclaim for lack of subject matter jurisdiction. For the reasons given herein, the Court denies the motions.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff Richard McKnight,[1] as trustee for The Richard & Sheila J. McKnight 2000 Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1). The McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. The Court denied a

---

[1] Richard McKnight is a apparently both a beneficiary and the trustee of the McKnight Trust and one of the McKnight Trust's attorneys in this action.

motion to reconsider transfer of the case from the Hon. Gloria M. Navarro to this Court, dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II"). Defendants appealed the judgment against them as to breach of guaranty, but the Court of Appeals dismissed the appeal for lack of finality.

Each group of intervenors has filed its own complaint in intervention. Intervenor Plaintiffs Thomas J. Kapp and Cynthia S. Roher, as trustees of the T&C Kapp Family Trust (the "Kapp Intervenors" or "Kapp") filed a Complaint in Intervention (the "Kapp CI") against Barkett and Castaic II for breach of contract, breach of guaranty, and declaratory judgment. (*See* Kapp CI, May 12, 2011, ECF No. 34). A second group of intervenors (the "Rasmussen Intervenors") have filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61). The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned the Castaic entities. (*See id.* ¶¶ 5, 67–69). A third group of intervenors, DACA-Castaic, LLC and Debt Acquisition Co. of America V, LLC ("DACA V," collectively, the "DACA Intervenors" or "DACA"), withdrew its motion to intervene.

The Court granted a motion to dismiss the Kapp CI in part, dismissing the declaratory judgment claim but refusing to dismiss the breach of contract and breach of guaranty claims for lack of standing. Defendants argued that Kapp Intervenors had transferred their interests in the relevant loans to DACA-Castaic, LLC and thus no longer had standing to sue for breach of contract or breach of guaranty. The Kapp Intervenors responded that they had only transferred the deeds of trust, not the beneficial interest. The Court invited summary judgment motions on

the issue but refused to dismiss because the Kapp CI was sufficiently pled. The Court completely denied a motion to dismiss the Rasmussen CI, noting that the claim for declaratory relief thereunder was different from the declaratory relief claims in the Complaint and the Kapp CI that the Court had dismissed. The Court struck Defendants' "crossclaim," which was in reality a third-party complaint and/or a counterclaim, directing Defendants to refile the pleading properly, which they did. (*See* Countercl. and Third-Party Compl., ECF Nos. 156, 157). Defendants countersued several Compass entities, the two DACA entities, and direct lenders for: (1) breach of contract; (2) declaratory judgment; (3) interference with prospective economic advantage; (4) usury; (5) breach of fiduciary duty (two Compass entities only); (6) unjust enrichment; and (7) slander of title.

The Court refused to stay the judgment against Defendants in favor of Plaintiff but noted that it would await summary judgment motions as to whether certain Intervenor Plaintiffs still owned the beneficial interest in the loans or had transferred them to DACA-Castaic, LLC or other parties. DACA asked the Court to grant it summary judgment on thirteen issues under its Counterclaim (as to Defendants' Third-party Complaint) for declaratory relief. The Court granted the motion in part, ruling that any direct lender who had transferred his or her beneficial interest in a Castaic loan to DACA had also transferred his or her interest in the respective deed of trust or guaranty and could no longer sue on the note or Barkett's guaranty thereof, because the interest in the guaranty followed the interest in the note automatically under California law. The Court noted that it remained a question of fact which direct lenders had effected such transfers. The evidence adduced at the time showed only a transfer of Castaic Partners, LLC's beneficial interest in the Castaic loans to DACA-Castaic, LLC, but did not indicate any previous transfer from any direct lenders to Castaic Partners, LLC. The Court also noted that no party disputed that the Castaic loans were in default but that it would not attempt to calculate the total amount due on each loan at the pre-trial stage. The Court also ruled that the notes were neither

1  usurious nor subject to offset. The Court ruled that the Castaic deeds of trust were enforceable
2  under their terms and that the pending foreclosures in California under the 2007 notices of
3  default were proper. The Court also noted that an action against Barkett for breach of guaranty
4  would not violate the one-action rule even after foreclosure, because Barkett was not the target
5  of any foreclosure, though Plaintiffs could only collect on a guaranty to the extent of any
6  deficiency remaining after a foreclosure sale. The Court also ruled that the Purchase Agreement,
7  under which DACA-Castaic, LLC purported to obtain the beneficial interests in the loans from
8  Castaic Partners, LLC, was in compliance with the 51% rule under Chapter 645B, and that
9  DACA-Castaic, LLC's decision to foreclose was valid. The Court declined to rule on the
10 priority of a lien against the properties held by DACA V, because DACA V and DACA-Castaic
11 were not adversaries in the present case.

12      Kapp Intervenors also moved for summary judgment on four points. The Court refused
13 to rule that Barkett was liable to Kapp Intervenors on the guaranty because it was not clear that
14 the Kapp Intervenors retained the beneficial interest in the loans. The Court again noted that no
15 party denied the Castaic loans were in default. The Court then ruled that Barkett was liable to
16 the Kapp Intervenors on the Castaic II Guaranty, but the Court added that Barkett could obtain
17 relief under Rule 60(b) if he could later show that the Kapp Intervenors had transferred their
18 interest in the Castaic II note. The Court ruled that it would not attempt to calculate the total
19 amount due on the Castaic II loan at the pre-trial stage. Next, the Court ruled that the Castaic
20 notes were to be interpreted by their terms under Nevada law, that Nevada had no usury law, and
21 that the borrower under the notes had waived any right of offset. Finally, the Court declined to
22 rule whether any direct lenders were liable for the wrongdoing of loan servicers.

23      Defendants have filed three similar motions. They ask the Court to dismiss the Kapp CI,
24 the Rasmussen CI, and DACA's Counterclaim for lack of subject matter jurisdiction.
25 ///

## II. LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377.  Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).  Additionally, a court may raise the question of subject matter jurisdiction *sua sponte* at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).  Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

### A. Diversity Jurisdiction

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a), (a)(1).  Under the diversity statute, all Plaintiffs must be diverse from all Defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).

### B. Bankruptcy Jurisdiction

"[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

> Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate . . . . The first type of "related to" proceeding involves a claim like the state-law breach of contract action at issue in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S.

1   50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

2   *Vacation Vill., Inc. v. Clark Cnty., Nev.*, 497 F.3d 902, 911 (9th Cir. 2007) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Section 541 makes part of the estate, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  "[P]ending causes of action qualify as 'property of the estate' in bankruptcy under 11 U.S.C. § 541(a)(1)—including causes of action sounding in tort, such as personal injury, for which the ultimate amount of recovery is uncertain." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1148 n.1 (9th Cir. 2009).  Furthermore, "'[T]he district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate.'  A chose in action is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).  For this reason, only bankruptcy trustees, debtors-in-possession, or bankruptcy court authorized entities have standing to sue on behalf of the estate." *McGuire v. United States*, 550 F.3d 903, 914 (9th Cir. 2008) (citations omitted).

**III.    ANALYSIS**

   **A.    Motion No. 177**

Defendants ask the Court to dismiss the Kapp CI for lack of diversity.  Barkett is a California citizen.  There is therefore not complete diversity if any Plaintiff is a California citizen.  Defendants argue that at least some direct lenders are California citizens.  The question as to the Kapp CI is whether any of the Kapp Intervenors are California citizens.  The Kapp CI lists only Thomas J. Kapp and Cynthia S. Roher, as trustees for the T&C Kapp Family Trust, as Intervenor Plaintiffs.  The Kapp CI avers that both Plaintiffs are Nevada citizens.  Defendants point to no evidence to the contrary.  The Court will therefore deny the motion.

   **B.    Motion No. 178**

Defendants ask the Court to dismiss the Rasmussen CI for lack of diversity.  Defendants note that the asserted basis for jurisdiction over the Rasmussen CI is related-to jurisdiction under

28 U.S.C. § 1334(b) and supplemental jurisdiction under § 1367, likely because there were several non-diverse intervenors. Defendants note that no Defendant is in bankruptcy, and that the Rasmussen Intervenors attempt to support jurisdiction under the Asset Resolution, LLC bankruptcy, but that no claims in the Rasmussen CI arise out of or are related to the Asset Resolution bankruptcy as those terms are used in the Bankruptcy Code. Defendants also argue for mandatory abstention under § 1334(c)(2) and equitable abstention.

Rasmussen Intervenors have the burden of showing federal jurisdiction once the issue is raised. They argue that the Court already denied a similar motion to dismiss for lack of jurisdiction in a July 26, 2011 order (the "Order"). In the Order, the Court addressed Defendants' motion to dismiss. Defendants argued that the Court should dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, and that the Court should abstain under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *See* Order 9:17–20, July 26, 2011, ECF No. 48). The Court rejected these arguments, (*see id.* 9–12), but never addressed any alleged lack of subject matter jurisdiction. The Court did not even imply bankruptcy jurisdiction, except to note as part of its abstention analysis that the present case was "'related-to' Article III cases that have been pending in this Court for several years." (*See id.* 11:21–22). The issue of subject matter jurisdiction was not before the Court, and the Court's statement that the case was related to other Article III cases was not meant to imply that the case was "related to" any bankruptcy case under the meaning of § 1334(b), but only that it arose out of some of the same facts as the USA Commercial case and others, which are Article III cases, not bankruptcy cases. Defendants may raise the issue of subject matter jurisdiction at any time, and it is the Rasmussen Intervenors, who assert federal jurisdiction, who have the burden of showing it.

In order to be "related to" a bankruptcy case such that federal jurisdiction is independently supported under § 1334(b), the present case must have some conceivable effect on

a bankruptcy estate. That is, it must seek an award against the estate, it must consist of a claim owned by the estate, or it must otherwise conceivably effect the administration of the estate. The Rasmussen Intervenors make no argument concerning how they believe the present case does any of these things. First, Asset Resolution is not a party to this proceeding and does not appear to be a necessary party. Second, the Rasmussen Intervenors do not allege that their claims are owned by and brought on behalf of Asset Resolution. Only the Trustee may bring such claims, because the Asset Resolution bankruptcy has been converted to Chapter 7. The Rasmussen Intervenors argue that the present case is "related to" the Asset Resolution bankruptcy because Asset Resolution was for a time the servicer of the Castaic Loans. More importantly, the Rasmussen Intervenors note that Asset Resolution's bankruptcy owns the fractional interests in each of the three Castaic loans that it obtained from Compass USA SPE, LLC. They note that the Court approved the appointment of a new loan servicer (Cross) and approved Cross' sale of certain direct lenders' Castaic loans to DACA-Castaic, LLC pursuant to a majority vote of the direct lenders. Asset Resolution, however, still owns its fractional interests in the Castaic loans, because the 51% rule does not permit the majority interest to transfer a minority interest's ownership itself, but only governs administration of the loans. Because the present action will determine whether the Castaic entities breached a contract to which Asset Resolution is also a party, whether Barkett breached a guaranty to which Asset Resolution is a party, and will result in declarations concerning the validity of these documents, the Court finds that the outcome of the present case could have a conceivable effect on the bankruptcy estate and will not dismiss for failure to satisfy § 1334(b).

Because there is bankruptcy jurisdiction, Intervenors need not rely on supplemental jurisdiction under § 1367 based upon the existence of diversity jurisdiction as between Plaintiffs and Defendants when the Complaint was filed. They could not rely on such an argument, in any case. Such a maneuver, i.e., the later joinder of non-diverse parties in a case based purely upon

diversity, is specifically prevented by the supplemental jurisdiction statute, lest the joinder and intervention rules obviate the complete diversity requirement. *See* 28 U.S.C. § 1367(b).

Defendants also argue that the Court must abstain under § 1334(c)(2). In related-to cases based upon state-law claims, a Court must abstain upon motion where the only basis for federal jurisdiction is § 1334(b) and where an action has been commenced in state court. 28 U.S.C. § 1334(c)(2). As noted, *supra*, the Rasmussen CI is based purely upon § 1334(b) and § 1367, but § 1367 is not an appropriate basis for supplemental jurisdiction over the Rasmussen CI because the Complaint is based purely upon § 1332, and the Rasmussen CI would not independently qualify for § 1332 jurisdiction. *See* § 1367(b). There is jurisdiction over the Rasmussen CI under § 1334(b), but because that is the sole basis for jurisdiction over the purely state-law claims in the Rasmussen CI, the Court must abstain under § 1334(c)(2) if there is a pending state court action. Defendants note that they initiated a state court action in the Los Angeles County Superior Court against many direct lenders and others concerning the Castaic loans, but that the California court has stayed the case out of deference to this Court. Defendants appear to be correct. The Court will not abstain. The California case is stayed pending the present case and its existence does not require mandatory abstention. Nor will the Court abstain equitably. The Court will not, if it can prevent it, permit these interrelated cases to be determined piecemeal in various courts.

### C.   Motion No. 179

Defendants ask the Court to dismiss DACA's Counterclaim for the same reasons it asks the Court to dismiss the Rassmussen CI. The motions are substantively identical in relevant part. The Counterclaim requests many declarations concerning the Castaic loans. These declarations could have a conceivable effect on Asset Resolution's bankruptcy estate. There is therefore § 1334(b) jurisdiction, and the Court will not abstain.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss Kapp CI (ECF No. 177), the Motion to Dismiss Rasmussen CI (ECF No. 178), and the Motion to Dismiss Counterclaim (ECF No. 179) are DENIED.

IT IS SO ORDERED.

Dated this 23rd day of July, 2012.

_____
ROBERT C. JONES
United States District Judge