# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

THE RICHARD AND SHEILA J. MCKNIGHT )
2000 FAMILY TRUST et al., )
)
       Plaintiffs, )
)   2:10-cv-01617-RCJ-GWF
vs. )
)   **ORDER**
WILLIAM J. BARKETT et al., )
)
       Defendants. )
)

    This case arises out of the same facts as the USA Commercial case. Pending before the Court is Intervenors' DACA-Castaic, LLC and Debt Acquisition Co. of America V, LLC ("DACA V") (collectively, "DACA") Motion for Leave to File Supplemental Counterclaim and Fourth Party Complaint (ECF No. 208).[1] For the reasons given herein, the Court grants the motion.

## I.    FACTS AND PROCEDURAL HISTORY

    Plaintiff Richard McKnight,[2] as trustee for The Richard & Sheila J. McKnight 2000 Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA

---

[1] DACA is itself a Third-Party Defendant. Therefore, although it refers to its "Third-Party Complaint," its complaint against additional parties constitutes a Fourth-Party Complaint, and the Court will refer to it this way.

[2] Richard McKnight is a apparently both a beneficiary and the trustee of the McKnight Trust and one of the McKnight Trust's attorneys in this action.

Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1). The McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. The Court denied a motion to reconsider transfer of the case from the Hon. Gloria M. Navarro to this Court, dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II"). Defendants appealed the judgment against them as to the breach of guaranty claim, but the Court of Appeals dismissed the appeal for lack of finality.

Each group of intervenors has filed its own complaint in intervention. Intervenor Plaintiffs Thomas J. Kapp and Cynthia S. Roher, as trustees of the T&C Kapp Family Trust (the "Kapp Intervenors") filed a Complaint in Intervention (the "Kapp CI") against Barkett and Castaic II for breach of contract, breach of guaranty, and declaratory judgment. (*See* Kapp CI, May 12, 2011, ECF No. 34). A second group of intervenors (the "Rasmussen Intervenors") have filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61). The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned each Castaic entity. (*See id.* ¶¶ 5, 67–69). DACA also filed a motion to intervene but later withdrew it.

The Court granted a motion to dismiss the Kapp CI in part, dismissing the declaratory judgment claim but refusing to dismiss the breach of contract and breach of guaranty claims for lack of standing. Defendants argued that Kapp Intervenors had transferred their interests in the relevant loans to DACA-Castaic, LLC and thus no longer had standing to sue for breach of

contract or breach of guaranty. The Kapp Intervenors responded that they had only transferred the deeds of trust, not the beneficial interests. The Court invited summary judgment motions on the issue but refused to dismiss because the Kapp CI was sufficiently pled. The Court completely denied a motion to dismiss the Rasmussen CI, noting that the claim for declaratory relief thereunder was different from the declaratory relief claims in the Complaint and the Kapp CI that the Court had dismissed. The Court struck Defendants' "crossclaim," which was in reality a third-party complaint and/or a counterclaim, directing Defendants to refile the pleading properly, which they did. (*See* Countercl. and Third-Party Compl., ECF Nos. 156, 157). Defendants brought counter- and third-party claims against several Compass entities, DACA, and direct lenders for: (1) breach of contract; (2) declaratory judgment; (3) interference with prospective economic advantage; (4) usury; (5) breach of fiduciary duty (two Compass entities only); (6) unjust enrichment; and (7) slander of title.

      The Court refused to stay Plaintiff's judgment against Defendants but noted that it would await summary judgment motions as to whether certain Intervenors still owned the beneficial interest in the loans or had transferred them to DACA-Castaic, LLC or other parties. DACA asked the Court to grant it summary judgment on thirteen issues under its Third-Party Counterclaim for declaratory relief. The Court granted the motion in part, ruling that any direct lender who had transferred his or her beneficial interest in a Castaic loan to DACA had also transferred his or her interest in the respective deed of trust or guaranty and could no longer sue on the note or Barkett's guaranty thereof, because any interest in a deed of trust or a guaranty follows the interest in the note as a matter of law in California. The Court noted that there remained questions of fact concerning which direct lenders had effected such transfers. The evidence adduced at the time showed only a transfer of Castaic Partners, LLC's beneficial interest in the Castaic loans to DACA-Castaic, LLC, but the evidence did not indicate any previous transfer from any direct lenders to Castaic Partners, LLC. The Court also noted that no

party disputed that the Castaic loans were in default but that it would not attempt to calculate the total amount due on each loan at the pre-trial stage. The Court also ruled that the notes were neither usurious nor subject to offset. The Court ruled that the Castaic deeds of trust were enforceable under their terms and that the pending foreclosures in California under the respective 2007 notices of default were proper. The Court also noted that an action against Barkett for breach of guaranty would not violate the one-action rule even after foreclosure, because Barkett was not the target of any foreclosure, though Plaintiffs could only collect on a guaranty to the extent of any deficiency remaining after a foreclosure sale. The Court also ruled that the Purchase Agreement, under which DACA-Castaic, LLC purported to obtain the beneficial interests in the loans from Castaic Partners, LLC, was in compliance with the 51% rule under Chapter 645B, and that DACA-Castaic, LLC's decision to foreclose was valid. The Court declined to rule on the priority of a lien against the properties held by DACA V, because DACA V and DACA-Castaic were not adversaries in the present case.

Kapp Intervenors also moved for summary judgment on four points. The Court refused to rule that Barkett was liable to Kapp Intervenors on the guaranty, because it was not clear that the Kapp Intervenors retained the beneficial interest in the loans. The Court again noted that no party denied the Castaic loans were in default. The Court then ruled that Barkett was liable to the Kapp Intervenors on the Castaic II Guaranty, but the Court added that Barkett could obtain relief under Rule 60(b) if he could later show that the Kapp Intervenors had transferred their interest in the Castaic II note. The Court ruled that it would not attempt to calculate the total amount due on the Castaic II loan at the pre-trial stage. Next, the Court ruled that the Castaic notes were to be interpreted by their terms under Nevada law, that Nevada had no usury law, and that the borrower under the notes had waived any right of offset. Finally, the Court declined to rule whether any direct lenders were liable for the wrongdoing of loan servicers.

Defendants asked the Court to dismiss the Kapp CI, the Rasmussen CI, and DACA's

Third-Party Counterclaim for lack of subject matter jurisdiction. The Court ruled that it had diversity jurisdiction to adjudicate the Kapp CI and bankruptcy jurisdiction (but not diversity jurisdiction) to adjudicate the Rasmussen CI and DACA's Third-Party Counterclaim, and that neither mandatory nor equitable abstention under the Bankruptcy Code were appropriate.

DACA has asked the Court for leave to file a Supplemental Third-Party Counterclaim and a Supplemental Fourth Party-Complaint.

## II.  LEGAL STANDARDS

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

## III.  ANALYSIS

DACA asks the Court for leave to file a Supplemental Third-Party Counterclaim against Defendants, as well as a Supplemental Fourth Party-Complaint (against Pond Avenue Partners, LLC ("Pond"), Merjan Financial Corp. ("Merjan"), and Palisades Capital (NV), LLC ("Palisades")), based upon events occurring after DACA filed its Third-Party Counterclaim on February 10, 2012. The subsequent events concern the foreclosure of the Castaic deeds of trust in California.

### A.  Proposed Supplemental Third-Party Counterclaim

The previous trustee under the Castaic and Castaic II deeds of trust refused to foreclose those properties when Defendants threatened litigation. (*See* Prop. Suppl. Third-Party Countercl. ¶ 7, Dec. 31, 2012, ECF No. 209). DACA-Castaic, after having been substituted as trustee, filed a Notice of Trustee's Sale as to the deeds of trust, but foreclosure was further delayed when Castaic and Castaic II filed for Chapter 11 bankruptcy protection in the Central District of California. (*See id.* ¶¶ 8–9). The bankruptcy court granted relief from the automatic stay, and DACA-Castaic conducted trustee's sales of the Castaic and Castaic II properties on November 13

and November 16, 2012 for credit bids of $2,000,000 and $500,000, respectively. (*See id.* 9–11).

DACA asks the Court to permit it to file its Supplemental Third-Party Counterclaim, which contains a single supplemental third-party counterclaim for a declaration that the these nonjudicial foreclosures were valid under California law and that Defendants have no right to rescind or set aside the foreclosures and that no Defendant has any interest in either of these properties by virtue of their alleged status as successors in interest to any Direct Lenders.

**B.     Proposed Supplemental Fourth Party-Complaint**

The majority of the Proposed Supplemental Fourth Party-Complaint recounts the history of the Castaic loans. (*See* Prop. Suppl. Fourth-Party Compl. 3–16, Dec. 31, 2012, ECF No. 210). The supplemental events concern the November 2012 foreclosures of the Castaic and Castaic II properties. *See supra*. On November 8, 2012, Palisades sued DACA and others in California state court to prevent the foreclosures, alleging without evidence that it was a successor beneficiary to the Castaic and Castaic II loans. (*Id.* ¶ 66). On November 16, 2012, Pond also sued DACA and others in California state court to prevent the foreclosures, alleging without evidence that it was the assignee of the benficial interest of certain direct lenders in the Castaic and Castaic II loans who had not agreed to become members of Castaic Investors, LLC. (*Id.* ¶ 67).[3]

DACA asks the Court to permit it to file its Supplemental Fourth-Party Complaint, which contains a single nominal supplemental fourth-party claim which in fact asks for many declarations: the fact of and details of the Castaic and Castaic II defaults, that the Castaic and Castaic II notes are to be interpreted under Nevada law, that the Castaic and Castaic II deeds of trust were liens enforceable by their terms, that certain second deeds of trust against the Castaic

---

[3]Castaic investors, LLC is the LLC created by Cross FLS, LLC (the Court-approved servicer of the Castaic loans after 51% election by the direct lenders under Chapter 645B) to hold the interests of those direct lenders who elected to appoint Cross FLS. (*Id.* ¶¶ 51–54).

and Castaic II properties secure the amounts due under the Castaic III note and are liens enforceable by their terms, that majority interests in each of the three Castaic loans voted to authorize Cross FLS to enter into the Purchase Agreement on behalf of all beneficiaries and that Cross FLS was authorized to do so under Chapter 645B, that DACA-Castaic, LLC is now the sole beneficiary under all three Castaic deeds of trust and the second deeds of trust against the Castaic and Castaic II properties, that the Castaic and Castiac II notices of default were proper under California law and that foreclosure may continue via notice of trustee's sale,[4] that if all or part of the Purchase Agreement is invalid DACA alternatively has the right as a co-beneficiary of the Castaic and Castaic II deeds of trust to substitute the trustee and direct foreclosure, that any funds advanced by DACA to pay delinquent property taxes or assessments constitute a first-priority lien, that the foreclosures were proper and Fourth-Party Defendants have no right to rescind them or set them aside, and that no Fourth-Party Defendant has any interest in the Castaic or Castaic II properties by virtue of their alleged status as successors in interest to any Direct Lenders.

   The Court grants the motion in part, with two conditions.  First, the Court will permit those supplemental claims relating to the foreclosure, but not those relating purely to interpretations of Chapter 645 and Cross FLS' authority.  To the extent these issues have not already been litigated, their collateral determination in deciding the foreclosure issues do not make declarations on those points themselves supplemental.  The Chapter 645 issues have been long pled and litigated.  Nor need the Court issue declarations on the pure legal status of the deeds of trust.  Broad declarations concerning priorities and such may be outside the scope of determining the true supplemental issues, i.e., the foreclosures.  It is enough for DACA to ask the

---

[4] This request is confusing.  In the Proposed Supplemental Third-Party Counterclaim, DACA alleges that trustee's sales have already occurred, and that DACA-Castaic purchased the Castaic and Castaic II properties via credit bids.

Court to adjudicate the validity of the foreclosures. The Court will address any necessary collateral issues along the way. The Court also warns that it will not issue in rem or quasi in rem judgments as to real property sited in California, but only in personam judgments as to the parties in this case. In other words, the Court will declare the rights of the parties as against one another but will not enter what amounts to a quiet title decree as against the properties. Second, for ease of the Court and the litigants, the Court will require DACA to consolidate its supplemental claims with its existing claims and its answer.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Leave to File Supplemental Counterclaim and Fourth Party Complaint (ECF No. 208) is GRANTED, as follows. Within fourteen (14) days of the entry of this Order into the electronic docket, DACA shall file an "Amended Answer to Third-Party Complaint, Third-Party Counterclaim, and Fourth-Party Complaint" in order to consolidate its answer (DACA does not have leave to amend the substance of its answer), its existing claims, and its supplemental claims into a single pleading.

IT IS SO ORDERED.

Dated this 11th day of January, 2013.

_____
ROBERT C. JONES
United States District Judge