1 | DAVID M. GILMORE
California Bar #105429
2 | dgilmore@gwvm.com
GILMORE, WOOD, VINNARD & MAGNESS
3 | P.O. Box 28907
Fresno, CA 93729-8907
4 | Telephone: (559) 448-9800
Facsimile: (559) 448-9899

5

6 | RICHARD SEGERBLOM
Nevada Bar #1010
7 | rsegerblom@lvcoxmail.com
700 S 3rd Street
8 | Las Vegas, Nevada 89101
Telephone: (702) 388-9600
Facsimile: (702) 385-2909

9

10 | Attorneys for William J. Barkett, Castaic
Partners, LLC, Castaic Partners II, LLC
and Castaic Partners III, LLC

11

12 | UNITED STATES DISTRICT COURT

13 | DISTRICT OF NEVADA

14

15 | THE RICHARD AND SHEILA J.
McKNIGHT 2000 FAMILY TRUST,
16 | Richard McKnight Trustee,

17 | Plaintiff,

18 | v.

19 | WILLIAM J. BARKETT, an individual,
CASTAIC III PARTNERS, LLC, a
20 | California limited liability company,

21 | Defendants.

22

23 | AND RELATED INTERVENOR
ACTIONS AND RELATED CROSS
24 | ACTION

CASE NO. CV-S-10-1617

**OPPOSITION TO DACA-CASTAIC, LLC AND DEBT ACQUISITION COMPANY OF AMERICA V, LLC'S MOTION FOR:**

**1) DEFAULT JUDGMENT ON DACA'S COUNTERCLAIM**

**2) SUMMARY JUDGMENT ON DACA'S SUPPLEMENTAL AND FOURTH PARTY COMPLAINTS; AND**

**3) SUMMARY JUDGMENT DENYING RELIEF ON THIRD PARTY COMPLAINT AND COUNTERCLAIM OF WILLIAM BARKETT. ET AL.**

### I.

### INTRODUCTION

In or about 2005, loans were made to entities known as Castaic

GILMORE, WOOD, VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA 93729-8907

7828-26\00305910.000

CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   Partners, LLC, Castaic Partners II, LLC, and Castaic Partners III, LLC ("Castaic

2   Partners") for those entities to acquire land in Los Angeles County near Castaic

3   ("Castaic Loans").  The land, approximately 1,100 acres, was purchased in separate

4   transactions, but for the purpose of a single development often referred to as Tapia

5   Ranch.  The loans were arranged by an entity known as U.S.A. Commercial

6   Mortgage ("USACM"), a company not licensed to do business in California.  What

7   USACM did was solicit investors for the loans and then each of those investors was

8   listed on the Notes and Deeds of Trust as beneficial owners of interests in the loans

9   secured by the Deeds of Trust.  The holders of the beneficial interests are referred to

10  as "Direct Lenders."  There are over 200 Direct Lenders holding different

11  percentages of the loans to the three Castaic entities.

12          The loans purport to have been entered into in Nevada but the

13  borrowers, Castaic Partners, were and are, California limited liability companies

14  with their principal place of business in San Diego County.  The property is all

15  within Los Angeles County.  A significant percentage of the Direct Lenders are

16  California residents or entities, including, without limitation, IRAs or other pension

17  plans.  The Deeds of Trust are California forms and include specific provisions as to

18  foreclosure issues that the transaction is governed by California law.

19          The loans were originally serviced by USACM but it ended up in

20  bankruptcy and one of its principals went to jail for their wrongful and illegal action

21  in making the loans.  Its interests as a loan servicer have passed through several

22  companies including, Compass FP, Silar Advisors, and Cross FLS ("Cross").  Each

23  of the loan servicers purport to act under the "51% Rule" in Nevada that they

24  contend gives them the right to decide the fate of the beneficial interests if 51% of

25  the beneficial interests vote to act. (Request for Judicial Notice ("RJN"), Exhibit 1).

26          In or about 2007, Compass FP, allegedly acting on behalf of the Direct

27  Lenders filed Notices of Default on the loans in California.  No further action was

28  ever taken on those Notices of Default by Compass FP.  A tolling agreement was

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                                    2                                    CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   entered into at that time.  The tolling agreement has since expired.  Suits were filed

2   in California seeking to enforce the guarantees of the loans.  The California suits

3   that were filed were ultimately dismissed.  Those suits acknowledged that California

4   law applied to the transactions.  In the meantime, Compass FP lost its right to act as

5   a servicer of the loan because it defaulted on obligations owed to its lender.  That

6   lender, Silar Advisors, foreclosed and assigned the servicing rights to Asset

7   Resolution Company ("ARC").  ARC eventually filed bankruptcy and its servicing

8   rights were ultimately terminated by the bankruptcy court. (RJN, Exhibit 2).

9         Thereafter, Cross claims that it became the loan servicer by a majority

10   vote of the Direct Lenders.  The vote was, and is, not valid and Cross was never

11   validly acting as a loan servicer for this loan or authorized to act on behalf of the

12   Direct Lenders.  The assignors to Barkett and the entities of which he was a

13   managing member never agreed to Cross acting as the loan servicer and no proper

14   notice of that assignment was ever provided.  (RJN, Exhibit 3).

15         In or about late 2011, Cross purported to conduct a vote under Nevada

16   law pursuant to which the Direct Lenders were asked to agree to a transfer of their

17   beneficial interests in the loans, and deeds of trust to Castaic Investors, LLC.  In

18   turn, Castaic Investors, LLC would become a member in DACA Castaic, LLC.

19   Essentially, the agreement was to make the Direct Lenders members of an LLC and

20   subordinate the interests of the Direct Lenders  to other financing that might be

21   advanced and to the claims of Debt Acquisition Corporation of America V that put

22   the "deal" together.  As this Court already ruled, no person can be compelled to

23   become a member of a limited liability company.  (Exhibit 10).

24         In order to obtain the "consent" of the beneficial interest holders, Cross

25   and DACA Castaic, DACA V and Howard Justus, the principal of DACA V,

26   represented to the Direct Lenders that on close of the Purchase Agreement, DACA

27   V or Justus or some entity affiliated with them would advance the sum of up to $3.2

28   million to pay the past due property taxes on the land that was security for the

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000           3           CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   Castaic Partners and the Castaic Partners II notes.  They also represented that they

2   would advance monies to deal with litigation that was already filed by Barkett, one

3   of the guarantors and the managing member of the entities.  It was confirmed to the

4   Direct Lenders that the Purchase Agreement transaction closed.  Justus, as the agent

5   of DACA V and DACA Castaic, also testified under oath in a bankruptcy

6   proceeding involving Castaic Partners and Castaic Partners II that the Purchase

7   Agreement had closed but the property taxes had never in fact advanced to DACA

8   Castaic to cover the alleged property taxes. (RJN, Exhibits 4 & 6).

9          In the meantime, this Court held that no Direct Lender could be forced

10   to transfer his or her beneficial interest in the note, deed of trust or guarantee to

11   DACA Castaic, LLC and that DACA Castaic did not hold the interest of any person

12   or entity that did not voluntarily transfer the interest to DACA Castaic.  This court

13   also held that the guarantee and the note/security interests could not be separated so

14   to the extent that a transfer occurred by a beneficial interest holder to the new LLC,

15   Castaic Investors, the entire interest was transferred. (Exhibit 10).

16          According to the filings by DACA Castaic under oath either in

17   discovery or otherwise in the related matters, DACA Castaic does not own or

18   control 100% of the beneficial interests in the Castaic Partners or Castaic Partners II

19   loans.  The vote was not valid and many of the persons or entities that Cross and

20   DACA claim voted in favor of the transaction did not do so.  The vote has never

21   been audited or confirmed.

22          Despite that, DACA Castaic proceeded to record a Notice of Sale for

23   the properties owned by Castaic Partners and Castaic Partners II with the sale

24   initially scheduled for July 31, 2012.  At no time did DACA Castaic seek or obtain

25   the approval of the Direct Lenders to do so.  Under California law, which governs

26   the Deeds of Trust, in order for action to be taken there must be a Majority Action

27   Affidavit. (Civ. Code section 2941.9).  That is supposed to be filed when the loans

28   are made but that did not happen here.  The foreclosures ultimately took placed in

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                    4                              CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   November of 2012 but it was not until July 2013 that Justus purported to file a

2   Majority Action Affidavit.  There is nothing to suggest that there was a vote to file a

3   Majority Action Affidavit. (RJN., Exh. 5)

4               In response to the efforts of DACA Castaic to conduct a foreclosure

5   sale, on or about July 30, Castaic Partners filed for protection under the Bankruptcy

6   Act.  On or about October 18, based on a motion filed by DACA Castaic, over the

7   objection of Castaic Partners, the court granted relief from stay to DACA Castaic to

8   foreclose on the properties.  At no time was Barkett, his entities, or their assignor

9   advised of the actions that were taken or advised that such actions could have a

10  detrimental effect on the interests of Barkett and his entities or the assignor in the

11  notes and deeds of trust.  Barkett or his entities are the assignee of interests held by

12  Direct Lenders who did not agree to the plan of DACA Castaic and did not agree to

13  become members of the limited liability company.  In addition, they did not consent

14  or agree that its beneficial interests in the notes or the deeds of trust should be

15  foreclosed on by DACA Castaic or anyone else.

16              In the bankruptcy filings by Castaic Partners, the entities have

17  represented to the court that they have a completed application for development of

18  the properties into a high end residential subdivision and that if the County of Los

19  Angeles is in the process of amending its General Plan for this area to reduce the

20  allowable density of development at this location.  According to the information

21  filed by DACA Castaic, the properties would be worth no more than $5 million if

22  the planned zoning is not in place.  That amount barely covers the property taxes

23  that were due.  However, according to Castaic Partners if they are permitted to

24  complete the application as currently submitted, the properties should be worth no

25  less than $35 million. (RJN, Exhibit 6).

26              With the foreclosure, DACA Castaic had to submit an entirely new

27  application and will now be stuck with the lower densities with all chance lost to

28  maximize the recovery for the benefit of the Direct Lenders, including Barkett and

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                    5                    CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   his Castaic entities.

2                                    II.

3   DACA's MOTION FOR DEFAULT JUDGMENT AND SUMMARY JUDGMENT
                        IS PROCEDURALLY INADEQUATE

4           Under Nevada Local Rule LR 7056 it is *mandatory* to file a Separate

5   Statement of Material Facts.  However, DACA failed to do so.  One was not served

6   upon the Barkett Parties, nor does a review of the Docket online show that one was

7   filed.  (Exhibit 7).  Therefore, the Court should deny DACA's motions until such

8   time as they are filed properly.

9                                    III.

10  DEFAULT JUDGMENT ON DACA'S COUNTERCLAIM IS NOT PROPER

11  A.      Motion to Set Aside the Default

12          Default judgment is improper.  Under Federal Rules of Civil Procedure

13  55 and 60(c), the defaulting party has a reasonable amount of time, but not more

14  than one year, to seek a motion to set aside the default.  It this case it has been only

15  six months, well within the time allowed.

16          The Barkett Parties answer was stricken and default entered because of

17  difficulty finding new local counsel.  The answer was filed in a timely matter.  The

18  Barkett Parties were represented by counsel admitted pro hac vice at all times.

19  Original local counsel substituted out of the case.  However, because of the vast

20  number of parties in this case, it was difficult to find new local counsel to associate

21  into the case.  While new counsel was not found by the deadline sought by the court,

22  the search continued, new counsel was associated in prior to the Court's order on the

23  motion to strike, but the answer was stricken anyway.  (Exhibit 8).

24          The Barkett Parties are still represented by local and pro hac vice

25  counsel.  A fundamental principle in the law is that the issues should be decided on

26  their merits.  In light of this principle, and the pending motion to set aside the

27  default, entry of a default judgment would be inappropriate.

28

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                          6                          CV-S-10-1617
                OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

B.     Relief Exceeds in Amount the Demand in the Pleadings

The relief for default judgments is limited in scope.  It "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. Rule Civ. Pro.  54(c); *Ferrara v. CMR Contracting LLC,* 848 F.Supp.2d 304, 311 (ED NY 2012) (damages recoverable by default judgment limited to type and quantity of damages demanded in the complaint).  This assures the "fundamental fairness" required by due process of law.  It would be unfair to allow a plaintiff to obtain different relief than that for which he prayed.

In its proposed judgment sections 2.1 and 2.5, DACA seeks the court to declare that:

2.1     The [Tapia Ranch Loan]…is in default.  The amount owing under the Castaic II Note, after deducting the credit bid of $2,000,000.00 made at foreclosure sale is $98,760,338.22 as of November 1, 2013 and shall increase by an additional $54,866.85 per diem thereafter until the date of entry of this Judgment.

2.2     …

2.3     The [Castaic II Loan] … is in default.  The amount owing under the Castaic II Note, after deducting the credit bid of $500,000.00 made at foreclosure sale is $23,801,458.04 as of November 1, 2013 and shall increase by an additional $13,223.03 per diem thereafter until the date of entry of this Judgment.

2.4     …

2.5     The [Castaic III Loan] … is in default.  The amount owing under the Castaic III Note is $21,004,165.34 as of November 1, 2013 and shall increase by an additional $11,668.98 per diem thereafter until the date of entry of this Judgment.

The amounts in DACA's proposed judgment are not the amounts prayed for in the counterclaim.  DACA originally prayed for relief in the sums of: $70,592,147.00 with $38,681.00 interest per diem for the Tapia Ranch Note; $16,898.00 with $9,264.00 interest per diem for the Castaic II Note; and $15,536,109.00 with $8,513.00 inter per diem for the Castaic III Note.  DACA is

GILMORE, WOOD, VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28007
FRESNO, CA  93729-8907

7828-26\00305910.000                          7                          CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1  seeking over $41,000,000.00 more than before, along with grossly increased interest
2  amounts per diem.  DACA's proposed default judgment far exceeds in amount that
3  which was demanded in the pleadings.  Therefore, default judgment should not be
4  entered. (Exhibits 8, 9).

5  C.    Validity of the Purchase Agreement

6          The validity of the Purchase Agreement is a genuine issue of material
7  fact to be determined at trial.  In the 3/14/12 Order the Court ruled "that the
8  Purchase Agreement was approved by a majority interest in the loans… ."
9  However, in its same order the Court stated that which direct lenders made an
10  assignment remains a question of fact.  The two concepts are contradictory, DACA
11  cannot establish that a majority approved the Purchase Agreement when the quantity
12  of assignments is unclear.  (Exhibits 8, 10).

13  D.    Validity of the Pending foreclosures

14          The validity of the foreclosures is also a genuine issue of material fact
15  to be determined at trial.  The Court's 3/14/12 Order is again contradictory.  It states
16  that it remains a question of fact which direct lenders made an assignment, but then
17  states foreclosures were proper.  (Exhibits 8, 10).  Without an established majority
18  of assignments, DACA did not have authority to initiate the foreclosure sales.
19  Without such authority the foreclosures are void.

20          Further, as DACA explains in their own memorandum of points and
21  authorities, the balance of the Castaic Notes is relevant to determine the
22  approximate balance of the Notes at various times in order to establish the validity
23  of the foreclosure notices, which are required under California Civil Code Section
24  2924 to set forth a "good faith estimate" of the amount secured by the trust deed.
25  However, if the balances have yet to be decided, there can be no good faith estimate.
26  The material fact of the good faith estimate remains, and the notices cannot yet be
27  validated.

28

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                                  8                                  CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

E.   Reconsideration or Clarification of Ruling Beyond Scope of Relief Demanded in Pleading

DACA suggests the Court reconsider or clarify its ruling on the effect of the Cross assignment on the interests of Direct Lenders not affirmatively voting to approve the Purchase Agreement, and determine to what extent the guaranty rights of the non-consenting Direct Lenders have also been assigned to DACA.  The Court has already ruled on this point.  In the Court's 3/14/12 Order, it ruled that the majority cannot transfer the minority's interests involuntarily.  (Exhibits 8, 10).  Also, DACA's original pleading does not pray for such relief making in improper for default judgment.

Additionally, DACA cites to a variety of prior cases to establish that the 3/14/12 Order is inconsistent with prior orders approving note sales based upon the 51% Rule.  However, in the Harbor Georgetown case cited all 67 votes were in favor of the sale.  There were no "no" votes.  That is not the case here.  The Barkett Parties, and other such as the McKnights and Kapps opposed the sale.  Without an audit, it is impossible to know who else opposed the sale.

In the Comvest case cited, the Court merely approved the sale of the specific interest under the care of the trustee.  No part of the order give the trustee any authority to sell any other beneficiary interest holder's interest.

Next, DACA believes the portion of the 3/14/12 Order addressing the effect of the Purchase Agreement, and trust deed assignments on those Direct Lenders constituting a minority interest, was intended to protect the minorities' rights.  Specifically, DACA wants the Court to modify its order to state that the 51% rule allows the assignment of 100% interest in fractionated notes and trust deeds upon a majority vote, making DACA the sole beneficiary under the Castaic Trust Deeds.  However, this does not protect the minority.  It strips them of their beneficiary interest in the notes and deeds and subordinates their interests without their consent.  Moreover, since the wrongful foreclosures already took place, and if

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA 93729-8907

7828-26\00305910.000                    9                    CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1  they were valid, the non-consenting Direct Lenders lost all of their collateral

2  interests and have no right to any deficiency against the entities.  Code of Civil

3  Procedure Section 580b prohibits any deficiency judgment after the sale of property

4  under a purchase money mortgage or deed of trust and places the full risk of

5  inadequate security on the purchase money lender (trust deed beneficiary). Cal.

6  Code Civ. Pro. § 580b; *American Sav. & Loan Asso. v. Leeds*, 68 Cal. 2d 611, 615

7  (1968) citing *Bargioni v. Hill*, 59 Cal.2d 121, 123 (1963), *Roseleaf v. Chierighino*,

8  59 Cal.2d 35, 42; *Brown v. Jensen*, 41 Cal.2d 193, 197-198 (1943). ].  If the

9  guarantees also went to DACA they also lost the right to sue on those guarantees.  It

10  should also be noted that at least one party, McKnight has a judgment on a

11  guarantee claim that, if DACA is right, never belonged to McKnight.

12          DACA acknowledges a continuing fiduciary duty to all Castaic Direct

13  Lenders although it expressly disclaimed being a loan servicer in its bankruptcy

14  filings. (Exhibits 2 & 5).  DACA alleges it will distribute funds to all Direct Lenders

15  regardless of whether they actually became members of Castaic Investors, LLC. It

16  fails to point out that those payments will be made only after it gets its fees, gets its

17  loans repaid and all the legal fees are paid.  The Direct Lenders never had that

18  explained to them before the alleged "vote" was taken.  Moreover, DACA still

19  purports to control all the decisions without regard to the claims or interests of the

20  non-consenting Direct Lenders.  This still divests the minority interest holders of

21  their right to control their own property interest.  If DACA succeeds on its motion,

22  in order to have any say in the disposition of the property the minority must become

23  a member of Castaic Investors, LLC.  It will be their only option.  While

24  membership is not mandatory or automatic, any desire to retain one's property rights

25  will require membership.  This is directly contradictory to the 3/14/12 Order in

26  which the Court clearly states that "the majority could not transfer the minority's

27  interest involuntarily, it could elect to transfer its own interests, to service the loan,

28  to foreclose, or to otherwise manage the loan without the permission of minority

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000

10

CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1  interests." (Exhibits 8, 10).

2           Therefore, the default judgment should not be entered.

3                    IV.

4  <u>THE COURT SHOULD NOT GRANT DACA'S MOTION FOR SUMMARY JUDGMENT</u>

5  A.    <u>Standard of Review</u>

6

7          Summary judgment under Federal Rule of Civil Procedure 56 must be

8  denied where there is a dispute as to the facts of the controversy or the inferences

9  that may be drawn from those facts. See *United States v. Diebold, Inc.,* 369 U.S.

10  654, 655 (1962). Summary judgment is only appropriate when the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with

12  affidavits, if any, show that there is no genuine issue as to any material fact and the

13  moving party is entitled to judgment as a matter of law." Orvosh v. Program of

14  Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129

15  (3d Cir. 2000). There is an issue for trial if there is sufficient evidence favoring the

16  nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty*

17  *Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding a summary judgment motion,

18  the court must draw all reasonable inferences in favor of the nonmoving party, and it

19  may not make credibility determinations or weigh the evidence*." Reeves v.*

20  *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-150 (2000). The burden of

21  persuasion on a party moving for summary judgment "is a stringent one which

22  always remains with the moving party. If there remains any doubt as to whether a

23  trial is necessary, summary judgment should not be granted." *Fagan v. Nordic*

24  *Prince, Inc.,* CIV.A. 91-5143, 1992 WL 361704 (D.N.J. July 17, 1992).

25          At the summary judgment stage, a court's function is not to weigh the

26  evidence and determine the truth, but to determine whether there is a genuine issue

27  for trial. See *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be

28  believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

GILMORE, WOOD, VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000

11

CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1    Additionally, in determining summary judgment, a court uses a burden-

2  shifting scheme:

>  When the party moving for summary judgment would bear
3  the burden of proof at trial, it must come with evidence
   which would entitle it to a directed verdict if the evidence
4  went uncontroverted at trial.  In such a case, the moving
   party has the initial burden of establishing the absence of a
5  genuine issue of fact of each issue material to its case.
   *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213
6  F.3d 474, 480 (9th Cir. 2000) (citations and internal
   quotations omitted).
7

8    In contrast, when the nonmoving party bears the burden of proving the

9  claim or defense, the moving party can meet its burden in two ways: (1) by

10  presenting evidence to negate an essential element of the nonmoving party's case; or

11  (2) by demonstrating that the nonmoving party failed to make a showing sufficient

12  to establish an element essential to that party's case on which that party will bear the

13  burden of proof at trial.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

14  If the moving party fails to meet its initial burden, summary judgment must be

15  denied and the court need not consider the nonmoving party's evidence.

16  B.    Summary Judgment on DACA's Supplemental and Fourth Party Complaint Is
       Improper

17

18        1.    Validity of the Foreclosures

19             a.    The November 2012 Foreclosure Sales are Void, Not Valid

20    Under California law, a trustee's sale under a deed of trust is subject to

21  a rebuttable presumption of validity only if the sale is voidable, not void.

22    A voidable foreclosure sale requires evidence of irregularities in the

23  sale process.  In a voidable sale, once a trustee's deed reciting that all legal notice

24  requirements have been satisfied has been transferred to a buyer at a foreclosure

25  sale, the sale can be successfully attacked on the grounds of procedural irregularity

26  only if the buyer is not a bona fide purchaser.  See *Moeller v. Lien,* 25 Cal.App.4th
   822, 831 (1994).

27

28    A void foreclosure sale creates no presumptions in favor of the

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA 93729-8907

7828-26\00305910.000                              12                              CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

purchaser at a trustee's sale.  And recitals in a trustee's deed regarding notices are irrelevant when the sale is void.  *Bank of America v. La Jolla Group II*, 129 Cal.App.4th 706 (2005) , found that in a void sale:

"The sale was improper because … the beneficiary had no right to exercise the power of sale.  No statute creates a presumption-conclusive or otherwise-for any purchaser-bona fide or otherwise—that any recitals in a trustee's deed render effective a sale that had no contractual basis." *Id.* at 714.

As to a buyer who is not a bona fide purchaser, such as the beneficiary buying at sale by way of a credit bid, there is only a rebuttable presumption regarding the recitals in the trustee's deed regarding notice.  This presumption can be overcome by a showing of irregularities in the required notices.  *Wolfe v. Lipsy* 163 Cal. App. 3d 633, 639 (1985) concluded: "…its effect is merely to provide prima facie proof of the particular facts that the sale was conducted regularly and fairly, until contradicted and overcome by other evidence [cites omitted]."

And, although Civil Code 2924 sets forth a presumption that the notices required prior to the conduct of the sale were properly provided if the trustee's deed states that they were properly given, these presumptions only apply to the notice provisions, not to other defects in the foreclosure process.  *Bank of America v. La Jolla Group II,* 129 Cal.App.4th 706, 714 (2005), finding that the provisions in question establish presumptions only about the adequacy of notices related to a foreclosure sale:

"Miller and Starr assert that '[t]he statutory presumption [created by section 2923] only applies to the propriety of the required notes, [and] it does not apply to other requirements of the foreclosure process.'

In the instant case, like in *Bank of America*, the sale was improper because DACA did not have the authority to initiate the foreclosures.  In the Purchase Agreement, Cross attempted to transfer to DACA 100% of the beneficiary interests in the Castaic loans.  Cross did not have the authority to transfer 100% of

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000

13

CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1     the interests. (RJN, Exhibit 11). In the Court's 3/14/12 Order it ruled that the

2     majority could not transfer the minority's interest involuntarily.  (Exhibits 8, 10).

3     This makes the Purchase Agreement, assigning away the minority's interest, invalid.

4     Therefore, the sales are void, and there is no presumption that the sales were

5     conducted regularly and properly.

6            The Court also noted that which direct lenders made assignments

7     remains a question of fact.  (Exhibits 8, 10).  Even DACA, in its motion, is seeking

8     clarification of what was transferred and the transfers effects on the minority holders

9     of beneficiary interests.   DACA has presented nothing that would cure this defect.

10    Therefore it is clear material questions of fact remain.

11           b.     <u>A Majority Action Affidavit Is Required, Defect Not Cured</u>

12          DACA asserts that because in July 2013 Mr. Justus filed a Majority

13    Action Affidavit with a list of Direct Lenders the foreclosure is not void.  However,

14    there has been no certification or audit of the vote count. (Exhibit 8).  DACA is

15    asserting it has a majority, but the Court stated which lenders assigned to DACA

16    was a remaining question of fact, and DACA has even raised the question as to what

17    interest the Barkett Parties hold.  Given such uncertainty, a determination of

18    majority is not possible, and remains a question of fact to be determined

19          DACA also ignores the fact that to be valid a Majority Action Affidavit

20    has to be done at the time the loan was made.  In this case, DACA seeks to do the

21    Affidavit after it purported to rely on the Nevada rule, foreclosed and now

22    essentially seeks ratification.  The statute provides for agreements in advance, not

23    ratification after the fact.  DACA has put  forth no evidence to show that the holders

24    agreed to the Affidavit.  It fails to explain how it could have any efficacy at this

25    point.

26         2.     <u>The Barkett Parties have the Right to Set Aside the Foreclosures</u>

27          A suit in equity to set aside a foreclosure sale is the traditional method

28    by which a nonjudicial foreclosure sale is challenged. The party seeking to set aside

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                 14                  CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1   the sale has the burden of pleading and proof at trial of improper procedure and

2   consequent prejudice. *Anderson v. Heart Federal Savings & Loan Assn.*, 28

3   Cal.App.3d 202, 209-10 (1972).

4             Nonetheless, in a summary judgment proceeding the burden is on the

5   moving party defendant to show that there is no triable issue of material fact with

6   respect to matters put in issue by the complaint and that the facts adduced in the

7   summary judgment proceeding entitle the defendant to a judgment as a matter of

8   law. *Id.* at 210; Cal. Code Civ. Pro. § 437c(c).

9             DACA has failed to meet this burden.  It has not established an audited

10  or certified majority vote for the Purchase Agreement, which remains in question.

11  Therefore it cannot establish its authority to initiate the foreclosure sales.  DACA

12  purported to foreclose as the owner of 100% of the beneficial interests even though

13  it knows that the Court has held otherwise.  The Direct Lenders who did not agree to

14  become members of the Castaic Investors, LLC presumably still owned their

15  beneficial interests in the deeds of trusts at the time of the foreclosures.  They are

16  now tenants in common as owners in the properties but DACA is acting as if it

17  controls the disposition of the property.  In reality, DACA had no authority to

18  foreclose and take title in the name of DACA as to the non-consenting Direct

19  Lenders and therefore the sales are void, tender is not required, and summary

20  judgment should be denied.

21             3.     The Barkett Parties Do Hold Any Direct Lender Interests.

22             There is a material question of fact as to what Direct Lender Interests

23  the Barkett Parties hold.  In his declaration in the Castaic Partners bankruptcy case,

24  Mr. Barkett testified that "Either I or entities of which I am the managing member,

25  including Pond Avenue Partners, have acquired beneficial interest in the Castaic

26  Partners note and deed of trust and in the Castaic II Partners deed of trust.  I have

27  also through the Castaic entities take defaults against beneficial owners in the Los

28  Angeles superior court action.  Between the purchases and defaults, either I or

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                                    15                                    CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1  entities that I manage own approximately 50% of the beneficial interest in the notes

2  secured by the deed of trust."  Those defaults were entered in a case pending in Los

3  Angeles and have never been set aside.  While the case is stayed, the defaults remain

4  effective and in place.  DACA tries to ignore the effect of those defaults.

5  In deciding a summary judgment motion, the court must draw all

6  reasonable inferences in favor of the nonmoving party, and it may not make

7  credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing*

8  *Products, Inc.*, 530 U.S. 133, 150 (2000).

9  The Barkett Parties hold Direct Lender interests.  DACA concedes in

10  its memorandum of points and authorities (p. 27) that interests were assigned.

11  Indeed,  Castaic Investors sent tax documents to Barkett relating to those very

12  assignments and cannot deny their existence now.

13  However, DACA then relies on the Response to Special Interrogatory

14  No. 5 to assert that no interests are held.  The specific quote DACA cites states:

15  "Neither Barkett personally, Merjan Financial or the Castaic entities (except by the

16  defaults) hold any Tapia Direct Lender Interests."  The answer was the same with

17  reference to the other loans.  It is clear.  The answer was not that they hold no

18  interests.  It clearly says "except by the defaults".  The Barkett Parties have always

19  represented they own interest in the loans.  Despite the fact that DACA requests

20  summary judgment consistent with the interrogatory answers, the result is the same,

21  the Barkett Parties maintain ownership of Direct Lender interests.

22  C.  <u>Summary Judgment on the Third Party Complaint and Counterclaim of</u>
    <u>William Barkett, et al, is Improper</u>

23

24  Summary Judgment should not be granted as to the Barkett Party

25  claims.  DACA's sole argument is if their default judgment is granted, none of the

26  relief sought against DACA may be granted.  However, the relief sought by default

27  judgment greatly exceeds the scope of what prayed in DACA's complaint and must

28  be denied.  Therefore, relief cannot be granted on default judgment.

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000

16

CV-S-10-1617

OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT

1    DACA fails to establish, alternatively, that there are no triable

2   questions of material fact for the Barkett's Third Party Complaint and Counterclaim.

3   Therefore, summary judgment should be denied.

4                                            V.

5                                     CONCLUSION

6    For the reasons stated above, the Barkett Parties request that DACA's

7   motion for default judgment and summary judgment be denied.

8

9    September ___, 2013

10                                     Respectfully submitted,

11                                     GILMORE, WOOD, VINNARD & MAGNESS

12

13

14                             By    /s/ Katherine Rigby for
15                                   David M. Gilmore
                                     Post Office Box 28907
16                                   Fresno, California  93729-8907
17                                   (559) 448-9800
                                     Attorneys for William J. Barkett, Castaic
18                                   Partners, LLC, Castaic Partners II, LLC
19                                   and Castaic Partners III, LLC

20

21

22

23

24

25

26

27

28

GILMORE, WOOD,
VINNARD & MAGNESS
A PROFESSIONAL CORPORATION
P.O. BOX 28907
FRESNO, CA  93729-8907

7828-26\00305910.000                        17                        CV-S-10-1617
OPPOSITION TO MOTION FOR DEFAULT JUDGMENT/SUMMARY JUDGMENT