1

2

3

4                       UNITED STATES DISTRICT COURT

5                            DISTRICT OF NEVADA

6

7   THE RICHARD AND SHEILA J. MCKNIGHT      )
    2000 FAMILY TRUST et al.,               )
                                            )
8              Plaintiffs,                  )
                                            )        2:10-cv-01617-RCJ-GWF
9          vs.                              )
                                            )        **ORDER**
10  WILLIAM J. BARKETT et al.,              )
                                            )
11             Defendants.                  )
                                            )

12

13       This case arises out of the same facts as the USA Commercial case.  Pending before the

14  Court are a Motion to Strike Answer to Counterclaim (ECF No. 259), aa Motion for Default

15  Judgment (ECF No. 286), and a Motion for Summary Judgment (ECF No. 289).

16  **I.      FACTS AND PROCEDURAL HISTORY**

17       Plaintiff Richard McKnight,[1] as trustee for The Richard & Sheila J. McKnight 2000

18  Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that

19  various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA

20  Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1).  The

21  McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

22       Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims:

23  (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment.  The Court denied a

24  _____

25       [1]Richard McKnight is a apparently both a beneficiary and the trustee of the McKnight
    Trust and one of the McKnight Trust's attorneys in this action.

1   motion to reconsider transfer of the case from the Hon. Gloria M. Navarro to this Court,

2   dismissed the second cause of action for declaratory judgment, granted offensive summary

3   judgment on the first cause of action for breach of guaranty, and permitted 260 other direct

4   lenders to intervene as Plaintiffs and to add claims against Castaic Partners, LLC ("Castaic" or

5   "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II").  Defendants appealed the judgment

6   against them as to breach of guaranty, but the Court of Appeals dismissed the appeal for lack of

7   jurisdiction.

8          Each group of intervenors has filed its own complaint in intervention.  Intervenor

9   Plaintiffs Thomas J. Kapp and Cynthia S. Roher, as trustees of the T&C Kapp Family Trust (the

10   "Kapp Intervenors" or "Kapp") filed a Complaint in Intervention (the "Kapp CI") against Barkett

11   and Castaic II for breach of contract, breach of guaranty, and declaratory judgment. (*See* Kapp

12   CI, May 12, 2011, ECF No. 34).  A second group of intervenors (the "Rasmussen Intervenors")

13   have filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II,

14   and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See*

15   Rasmussen CI, Aug. 8, 2011, ECF No. 61).  The Rasmussen CI alleges the amount each

16   Rasmussen Intervenor loaned the Castaic entities. (*See id.* ¶¶ 5, 67–69).  A third group of

17   intervenors, DACA-Castaic, LLC and Debt Acquisition Co. of America V, LLC ("DACA V,"

18   collectively, the "DACA Intervenors" or "DACA"), withdrew its motion to intervene.

19          The Court granted a motion to dismiss the Kapp CI in part, dismissing the declaratory

20   judgment claim but refusing to dismiss the breach of contract and breach of guaranty claims for

21   lack of standing.  Defendants argued that Kapp Intervenors had transferred their interests in the

22   relevant loans to DACA-Castaic, LLC and thus no longer had standing to sue for breach of

23   contract or breach of guaranty.  The Kapp Intervenors responded that they had only transferred

24   the deeds of trust, not the beneficial interest.  The Court invited summary judgment motions on

25   the issue but refused to dismiss because the Kapp CI was sufficiently pled.  The Court

1   completely denied a motion to dismiss the Rasmussen CI, noting that the claim for declaratory

2   relief thereunder was different from the declaratory relief claims in the Complaint and the Kapp

3   CI that the Court had dismissed.  The Court struck Defendants' "crossclaim," which was in

4   reality a third-party complaint and/or a counterclaim, directing Defendants to refile the pleading

5   properly, which they did. (*See* Countercl. and Third-Party Compl., ECF Nos. 156, 157).

6   Defendants countersued several Compass entities, the two DACA entities, and direct lenders for:

7   (1) breach of contract; (2) declaratory judgment; (3) interference with prospective economic

8   advantage; (4) usury; (5) breach of fiduciary duty (two Compass entities only); (6) unjust

9   enrichment; and (7) slander of title.

10          The Court refused to stay the judgment against Defendants in favor of Plaintiff but noted

11   that it would await summary judgment motions as to whether certain Intervenor Plaintiffs still

12   owned the beneficial interest in the loans or had transferred them to DACA-Castaic, LLC or

13   other parties.  DACA asked the Court to grant it summary judgment on thirteen issues under its

14   Counterclaim (as to Defendants' Third-Party Complaint) for declaratory relief.  The Court

15   granted the motion in part, ruling that any direct lender who had transferred his or her beneficial

16   interest in a Castaic loan to DACA had also transferred his or her interest in the respective deed

17   of trust or guaranty and could no longer sue on the note or Barkett's guaranty thereof, because the

18   interest in the guaranty followed the interest in the note automatically under California law.  The

19   Court noted that it remained a question of fact which direct lenders had effected such transfers.

20   The evidence adduced at the time showed only a transfer of Castaic Partners, LLC's beneficial

21   interest in the Castaic loans to DACA-Castaic, LLC, but did not indicate any previous transfer

22   from any direct lenders to Castaic Partners, LLC.  The Court also noted that no party disputed

23   that the Castaic loans were in default but that it would not attempt to calculate the total amount

24   due on each loan at the pre-trial stage.  The Court also ruled that the notes were neither usurious

25   nor subject to offset.  The Court ruled that the Castaic deeds of trust were enforceable under their

1   terms and that the pending foreclosures in California under the 2007 notices of default were

2   proper.  The Court also noted that an action against Barkett for breach of guaranty would not

3   violate the one-action rule even after foreclosure, because Barkett was not the target of any

4   foreclosure, though Plaintiffs could only collect on a guaranty to the extent of any deficiency

5   remaining after a foreclosure sale.  The Court also ruled that the Purchase Agreement, under

6   which DACA-Castaic, LLC purported to obtain the beneficial interests in the loans from Castaic

7   Partners, LLC, was in compliance with the 51% rule under Chapter 645B, and that DACA-

8   Castaic, LLC's decision to foreclose was valid.  The Court declined to rule on the priority of a

9   lien against the properties held by DACA V, because DACA V and DACA-Castaic were not

10   adversaries in the present case.

11          Kapp Intervenors also moved for summary judgment on four points.  The Court refused

12   to rule that Barkett was liable to Kapp Intervenors on the guaranty because it was not clear that

13   the Kapp Intervenors retained the beneficial interest in the loans.  The Court again noted that no

14   party denied the Castaic loans were in default.  The Court then ruled that Barkett was liable to the

15   Kapp Intervenors on the Castaic II Guaranty, but the Court added that Barkett could obtain relief

16   under Rule 60(b) if he could later show that the Kapp Intervenors had transferred their interest in

17   the Castaic II note.  The Court ruled that it would not attempt to calculate the total amount due on

18   the Castaic II loan at the pre-trial stage.  Next, the Court ruled that the Castaic notes were to be

19   interpreted by their terms under Nevada law, that Nevada had no usury law, and that the

20   borrower under the notes had waived any right of offset.  Finally, the Court declined to rule

21   whether any direct lenders were liable for the wrongdoing of loan servicers.

22          Defendants then filed three similar motions, asking the Court to dismiss the Kapp CI, the

23   Rasmussen CI, and DACA's Counterclaim for lack of subject matter jurisdiction.  The Court

24   ruled that it had diversity jurisdiction to adjudicate the Kapp CI and bankruptcy jurisdiction (but

25   not diversity jurisdiction) to adjudicate the Rasmussen CI and DACA's Third-Party

1    Counterclaim, and that neither mandatory nor equitable abstention under the Bankruptcy Code

2    were appropriate.

3           In March 2013, the Court granted in part DACA's motion for leave to file a Supplemental

4    Third-Party Counterclaim against Defendants and a Supplemental Fourth Party-Complaint

5    (against Pond Avenue Partners, LLC ("Pond"), Merjan Financial Corp. ("Merjan"), and Palisades

6    Capital (NV), LLC), based upon events occurring after DACA filed its Third-Party Counterclaim

7    in February 2012.  DACA soon thereafter filed that consolidated pleading, i.e., the Answer,

8    Counterclaim, Supplemental Counterclaim, and Fourth-Party Complaint (the "DACA Pleading").

9    (*See* DACA Pldg., Mar. 25, 2012, ECF No. 231).  The Court adopted the magistrate judge's

10   recommendation to strike the answers of Barkett and the Castaic Defendants and to instruct the

11   Clerk to enter default as a sanction for failing to comply with a court order to retain new counsel.

12   The Clerk entered default as to the February 2012 Counterclaim, accordingly.

13          DACA has asked the Court to strike Barkett's and the Castaic Defendants' Answer and

14   Counterclaims (ECF No. 247) to the DACA Pleading and has also requested a default judgment

15   or offensive summary judgment as to its third-party counterclaims in the DACA Pleading,

16   offensive summary judgment on its fourth-party claims, and defensive summary judgment

17   against Defendants' third-party claims.

18   **II.      LEGAL STANDARDS**

19          A court must grant summary judgment when "the movant shows that there is no genuine

20   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21   Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

22   *Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

23   is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

24   principal purpose of summary judgment is "to isolate and dispose of factually unsupported

25   claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

1  judgment, a court uses a burden-shifting scheme:

2      When the party moving for summary judgment would bear the burden of proof at
       trial, it must come forward with evidence which would entitle it to a directed verdict
3      if the evidence went uncontroverted at trial.  In such a case, the moving party has the
       initial burden of establishing the absence of a genuine issue of fact on each issue
4      material to its case.

5  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

6  and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

7  of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

8  presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

9  demonstrating that the nonmoving party failed to make a showing sufficient to establish an

10 element essential to that party's case on which that party will bear the burden of proof at trial. *See*

11 *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

12 judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

13 *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

14      If the moving party meets its initial burden, the burden then shifts to the opposing party to

15 establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

16 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party

17 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

18 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

19 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

20 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

21 by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

22 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

23 allegations of the pleadings and set forth specific facts by producing competent evidence that

24 shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

25      At the summary judgment stage, a court's function is not to weigh the evidence and

1   determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

2   U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

3   to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

4   colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

5   **III.    ANALYSIS**

6           **A.    Motion to Strike (ECF No. 259)**

7           DACA argues that Defendants' new Answer and Counterclaim (ECF No. 247) is an

8   attempt to circumvent the order striking their previous Answer and Counterclaim for failure to

9   comply with the Court's orders.  The Court has compared DACA's previous Counterclaim (ECF

10   No. 100) against Defendants to the new consolidated DACA Pleading (ECF No. 231) containing

11   the counterclaims and supplemental counterclaims against Defendants and finds that Defendants

12   have not had an opportunity to respond to the second counterclaim or the supplemental

13   counterclaim in the DACA Pleading.  DACA's original Counterclaim (ECF No. 100) included a

14   single counterclaim for declaratory judgment as to the Castaic loans.  The DACA Pleading adds a

15   counterclaim for appointment of a receiver, as well as a supplemental counterclaim for a

16   declaration as to the propriety of the foreclosure of the Castaic and Castaic II deeds of trust.  The

17   Court agrees that Defendants have no right to circumvent the Court's previous ruling striking

18   their original Answer.  Therefore, the Court will strike the new Answer and Counterclaim (ECF

19   No. 247) in part, i.e., as against the first counterclaim in the DACA Pleading.  Neither will the

20   Court set aside the default as to the first counterclaim, as it was based upon failure to comply

21   with court orders, not upon potentially excusable neglect.  However, the Court will not strike the

22   new Answer and Counterclaim as against the second counterclaim or the supplemental

23   counterclaim in the DACA Pleading.  Defendants have yet had no opportunity to defend against

24   these counterclaims.

25           The Court also strikes the "Fifth Party Counterclaim" in the Answer and Counterclaim

1   (ECF No. 247) as improper.  Defendants must request leave to amend their Third-Party

2   Complaint (ECF Nos. 156, 157).  Defendants may not attempt to avoid the requirement of leave

3   to do so, *see* Fed. R. Civ. P. 15(a)(2), by mislabeling what is in substance a putative amendment

4   to their existing Third-Party Complaint as a "fifth party" claim against existing Third-party

5   Defendants.

6           **B.**       **Motion for Default Judgment (ECF No. 286)**

7         Next, DACA asks the Court to grant it a default judgment as to its first counterclaim and

8   first supplemental counterclaims, but to dismiss its second counterclaim for appointment of a

9   receiver, without prejudice.  The Court grants the motion in part.  The Court will enter default

10   judgment as to the first counterclaim for declaratory judgment.  Defendants defaulted on that

11   claim.  The Court will also grant the voluntary dismissal of the second counterclaim, without

12   prejudice.  The Court will not grant default judgment as to the supplemental counterclaim.  No

13   default has been entered on that counterclaim, and Defendants have defended it.

14           **C.**       **Motion for Summary Judgment (ECF No. 289)**

15         Finally, DACA asks the Court to grant it: (1) offensive summary judgment on its fourth-

16   party claims against Pond Avenue Partners, Merjan Financial, LLC, and Palisades Capital (NV)

17   LLC; (2) offensive summary judgment on its supplemental counterclaim for a declaration as to

18   the as to the propriety of the foreclosure of the Castaic and Castaic II deeds of trust; (3) and

19   defensive summary judgment against Defendants' third-party claims.

20           **1.**       **Offensive Summary Judgment on DACA's Fourth-Party Complaint**

21         The Court denies the motion for offensive summary judgment as to Pond Avenue

22   Partners and Merjan Financial, LLC, who have not appeared and who do not appear to have been

23   served.  The Court, however, will grant offensive summary judgment against Palisades Capital,

24   as the Clerk has entered default against it, DACA has satisfied its initial burden on summary

25   judgment, and Palisades Capital has not responded to the present motion.  Because summary

1  judgment as to the requested declaration can only be entered against Palisades Capital, however,

2  it affects only that party's rights and remedies, and the Court may in fact determine the issues

3  differently as to other parties who ultimately defend against DACA's claims once served.

4       **2.       Offensive Summary Judgment on DACA's Supplemental Third-Party Counterclaim**

5       Second, the Court denies offensive summary judgment on the supplemental third-party

6  counterclaim, as it appears no discovery has occurred as to that claim or even any new scheduling

7  order entered governing discovery and motions thereupon, and there is therefore good cause to

8  modify the scheduling order to accommodate limited discovery as to the supplemental claim. *See*

9  *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 365–66 (D. Del 2006) (citing

10  Fed. R. Civ. P. 16(b)).  Although the Court grants offensive summary judgment on the same

11  claim as against defaulted Fourth-party Defendant Palisades Capital, Barkett and Castaic

12  Defendants have defended the same claim by answering the DACA Pleading, and they are

13  entitled to defend the claim.

14       **3.       Defensive Summary Judgment on Defendants' Third-Party Complaint**

15       Third, the Court grants in part and denies in part defensive summary judgment to DACA

16  as against Defendant's Third-Party Complaint.  DACA moves as against the second third-party

17  claim for declaratory judgment and the seventh third-party claim for slander of title.

18       **a.       Declaratory Judgment**

19       The second claim of Defendants' Third-Party Complaint against DACA appears to allege

20  three basic circumstances: (1) that DACA did not obtain any interests of the Direct Lenders

21  because it did not comply with California law in purportedly obtaining such interests; (2) that

22  even if it obtained the interests of some Direct Lenders under Nevada's 51% rule, it did not

23  obtain the interests of non-consenting partial owners, and (3) that to the extent DACA has

24  acceded to the beneficial interests of Direct Lenders in the Castaic Loans, it has also acceded to

25

1   the beneficial interests in related deeds of trust and guaranties as a matter or law. (*See* Third-party

2   Compl. ¶¶ 16–18, Jan. 13, 2012, ECF Nos. 156, 157).[2]  Defendants pray for a declaration to that

3   effect via the second third-party claim. (*See id.* ¶¶ 20–23).

4        The Court has already ruled that the Purchase Agreement, under which DACA-Castaic,

5   LLC obtained the beneficial interests in the loans from Castaic Partners, LLC, was in compliance

6   with the 51% rule under Chapter 645B, and that DACA-Castaic, LLC's decision to foreclose was

7   valid.  The Court therefore grants summary judgment to DACA in part as against Defendants'

8   third party claim for a declaration to the contrary.  However, the Court has also ruled that any

9   deed of trust or guaranty related to the Castaic Loans followed the interest in the respective notes

10  as a matter of law, and the Court will not grant defensive summary judgment to DACA as against

11  Defendants' third party claim for a declaration to that effect.  To the contrary, the Court is

12  inclined to grant a putative offensive motion for summary judgment by Defendants in this regard

13  to the extent such a motion is still technically necessary.

14        **b.        Slander of Title**

15        The Court grants defensive summary judgment on the slander of title claim, as it has

16  already ruled the transfer and foreclosure by DACA were proper, at least with respect to

17  ownership.  The Court has not yet addressed DACA's supplemental third-party counterclaim for

18  a declaration that there was no statutory or other procedural defect in foreclosure.  But even if the

19  Court were ultimately to find that there were come procedural defect in the foreclosure

20  permitting relief therefrom under the California statutes, that would not support a slander of title

21  claim in a case such as this one where default is undisputed.  Under such circumstances, the

22  filing of a lien or initiation of foreclosure proceedings cannot constitute a slander upon the title

23  because a default negates the possibility that the assertion of the right to foreclose is "false and

24

25        [2]Defendants filed their consolidated Counterclaim and Third-Party Complaint twice.

1   malicious." *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 478 (Nev. 1998) (citting

2   *Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987)) ("[Defendant] however only recorded the

3   notice of trustee's sale and did not record the notice of default.  Even if [Defendant] had recorded

4   both documents, these documents were not false because Plaintiffs concede that they have

5   defaulted under the note and the Property was intended to be sold.").

6   ///

7   ///

8   ///

9   ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Strike Answer to Counterclaim (ECF No. 259) is GRANTED IN PART and DENIED IN PART.  The Answer and Counterclaim (ECF No. 247) is STRICKEN as to the answer to the first counterclaim in the DACA Pleading (ECF No. 231), but not as to the answers to the second counterclaim and the supplemental counterclaim therein.

IT IS FURTHER ORDERED that the Motion for Default Judgment (ECF No. 286) is GRANTED IN PART and DENIED IN PART.  The Court will enter default judgment in favor of DACA and against Defendants as to DACA's first third-party counterclaim, but not as to its supplemental counterclaim.  Counsel for DACA shall SUBMIT a proposed form of judgment.

IT IS FURTHER ORDERED that DACA's second third-party counterclaim for appointment of a receiver is DISMISSED, without prejudice, at its request.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 289) is GRANTED IN PART and DENIED IN PART.  The Court grants offensive summary judgment to DACA's on its Fourth-Party Complaint as against Palisades Capital (NV) LLC, but denies it as against Pond Avenue Partners or Merjan Financial, LLC.  The Court denies offensive summary judgment to DACA's on its supplemental third-party counterclaim against Defendants.  The Court grants in part and denies in part defensive summary judgment to DACA as against Defendants' second third-party claim for declaratory judgment, as explained, *supra*.  The Court grants defensive summary judgment to DACA as against Defendants' seventh third-party claim for slander of title.

IT IS SO ORDERED.

Dated this 11th day of December, 2013.

_____
ROBERT C. JONES
United States District Judge

Page 12 of  12