# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

THE RICHARD AND SHEILA J. MCKNIGHT 2000 FAMILY TRUST et al.,

      Plaintiffs,

vs.

WILLIAM J. BARKETT et al.,

      Defendants.

2:10-cv-01617-RCJ-GWF

**ORDER**

This is a complex breach of guaranty case related to the USA Commercial bankruptcy. Pending before the Court is a Motion for Summary Judgment (ECF No. 331). For the reasons given herein, the Court grants the motion.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Richard McKnight,[1] as trustee for The Richard & Sheila J. McKnight 2000 Family Trust ("the McKnight Trust") provided $100,000 out of the total of $4.5 million that various direct lenders loaned to Defendant Castaic III Partners, LLC ("Castaic III") through USA Commercial Mortgage Co. ("USA Commercial"). (Compl. ¶ 5, Sept. 21, 2010, ECF No. 1). The McKnight Trust has received no interest payments on the loan since August 2006. (*Id.* ¶ 9).

Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. The Court denied a

---

[1] Richard McKnight is a apparently both a beneficiary and the trustee of the McKnight Trust and one of the McKnight Trust's attorneys in this action.

motion to reconsider transfer of the case from the Hon. Gloria M. Navarro to this Court, dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II"). Defendants appealed the judgment against them as to breach of guaranty, but the Court of Appeals dismissed the appeal for lack of jurisdiction.

Each group of intervenors has filed its own complaint in intervention. Intervenor Plaintiffs Thomas J. Kapp and Cynthia S. Roher, as trustees of the T&C Kapp Family Trust (the "Kapp Intervenors" or "Kapp") filed a Complaint in Intervention (the "Kapp CI") against Barkett and Castaic II for breach of contract, breach of guaranty, and declaratory judgment. (*See* Kapp CI, May 12, 2011, ECF No. 34). A second group of intervenors (the "Rasmussen Intervenors") have filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61). The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned the Castaic entities. (*See id.* ¶¶ 5, 67–69). A third group of intervenors, DACA-Castaic, LLC and Debt Acquisition Co. of America V, LLC ("DACA V," collectively, the "DACA Intervenors" or "DACA"), withdrew its motion to intervene.

The Court granted a motion to dismiss the Kapp CI in part, dismissing the declaratory judgment claim but refusing to dismiss the breach of contract and breach of guaranty claims for lack of standing. Defendants argued that Kapp Intervenors had transferred their interests in the relevant loans to DACA-Castaic, LLC and thus no longer had standing to sue for breach of contract or breach of guaranty. The Kapp Intervenors responded that they had only transferred the deeds of trust, not the beneficial interest. The Court invited summary judgment motions on the issue but refused to dismiss because the Kapp CI was sufficiently pled. The Court

completely denied a motion to dismiss the Rasmussen CI, noting that the claim for declaratory relief thereunder was different from the declaratory relief claims in the Complaint and the Kapp CI that the Court had dismissed. The Court struck Defendants' "crossclaim," which was in reality a third-party complaint and/or a counterclaim, directing Defendants to refile the pleading properly, which they did. (*See* Countercl. and Third-Party Compl., ECF Nos. 156, 157). In that pleading, Defendants countersued several Compass entities, the two DACA entities, and direct lenders for: (1) breach of contract; (2) declaratory judgment; (3) interference with prospective economic advantage; (4) usury; (5) breach of fiduciary duty (two Compass entities only); (6) unjust enrichment; and (7) slander of title.

The Court refused to stay the judgment against Defendants in favor of Plaintiff but noted that it would await summary judgment motions as to whether certain Intervenor Plaintiffs still owned the beneficial interest in the loans or had transferred them to DACA-Castaic, LLC or other parties. DACA asked the Court to grant it summary judgment on thirteen issues under its Counterclaim (as to Defendants' Third-Party Complaint) for declaratory relief. The Court granted the motion in part, ruling that any direct lender who had transferred his or her beneficial interest in a Castaic loan to DACA had also transferred his or her interest in the respective deed of trust or guaranty and could no longer sue on the note or Barkett's guaranty thereof, because the interest in the guaranty followed the interest in the note automatically under California law. The Court noted that it remained a question of fact which direct lenders had effected such transfers. The evidence adduced at the time showed only a transfer of Castaic Partners, LLC's beneficial interest in the Castaic loans to DACA-Castaic, LLC, but did not indicate any previous transfer from any direct lenders to Castaic Partners, LLC. The Court also noted that no party disputed that the Castaic loans were in default but that it would not attempt to calculate the total amount due on each loan at the pre-trial stage. The Court also ruled that the notes were neither usurious nor subject to offset. The Court ruled that the Castaic deeds of trust were enforceable under their

terms and that the pending foreclosures in California under the 2007 notices of default were proper.  The Court also noted that an action against Barkett for breach of guaranty would not violate the one-action rule even after foreclosure, because Barkett was not the target of any foreclosure, though Plaintiffs could only collect on a guaranty to the extent of any deficiency remaining after a foreclosure sale.  The Court also ruled that the Purchase Agreement, under which DACA-Castaic, LLC purported to obtain the beneficial interests in the loans from Castaic Partners, LLC, was in compliance with the 51% rule under Chapter 645B, and that DACA-Castaic, LLC's decision to foreclose was valid.  The Court declined to rule on the priority of a lien against the properties held by DACA V, because DACA V and DACA-Castaic were not adversaries in the present case.

Kapp Intervenors also moved for summary judgment on four points.  The Court refused to rule that Barkett was liable to Kapp Intervenors on the guaranty because it was not clear that the Kapp Intervenors retained the beneficial interest in the loans.  The Court again noted that no party denied the Castaic loans were in default.  The Court then ruled that Barkett was liable to the Kapp Intervenors on the Castaic II Guaranty, but the Court added that Barkett could obtain relief under Rule 60(b) if he could later show that the Kapp Intervenors had transferred their interest in the Castaic II note.  The Court ruled that it would not attempt to calculate the total amount due on the Castaic II loan at the pre-trial stage.  Next, the Court ruled that the Castaic notes were to be interpreted by their terms under Nevada law, that Nevada had no usury law, and that the borrower under the notes had waived any right of offset.  Finally, the Court declined to rule whether any direct lenders were liable for the wrongdoing of loan servicers.

Defendants then filed three similar motions, asking the Court to dismiss the Kapp CI, the Rasmussen CI, and DACA's Counterclaim for lack of subject matter jurisdiction.  The Court ruled that it had diversity jurisdiction to adjudicate the Kapp CI and bankruptcy jurisdiction (but not diversity jurisdiction) to adjudicate the Rasmussen CI and DACA's Third-Party

Counterclaim, and that neither mandatory nor equitable abstention under the Bankruptcy Code were appropriate.

In March 2013, the Court granted in part DACA's motion for leave to file a Supplemental Third-Party Counterclaim against Defendants and a Supplemental Fourth Party-Complaint (against Pond Avenue Partners, LLC ("Pond"), Merjan Financial Corp. ("Merjan"), and Palisades Capital (NV), LLC), based upon events occurring after DACA filed its Third-Party Counterclaim in February 2012. DACA soon thereafter filed that consolidated pleading, i.e., the Answer, Counterclaim, Supplemental Counterclaim, and Fourth-Party Complaint (the "DACA Pleading"). (*See* DACA Pldg., Mar. 25, 2012, ECF No. 231). The Court adopted the magistrate judge's recommendation to strike the answers of Barkett and the Castaic Defendants and to instruct the Clerk to enter default as a sanction for failing to comply with a court order to retain new counsel. The Clerk entered default as to the February 2012 Counterclaim, accordingly.

DACA asked the Court to strike Barkett's and the Castaic Defendants' Answer and Counterclaims (ECF No. 247) to the DACA Pleading and also requested a default judgment or offensive summary judgment as to its third-party counterclaims in the DACA Pleading, offensive summary judgment on its fourth-party claims, and defensive summary judgment against Defendants' third-party claims. The Court struck the answer as against the first counterclaim in the DACA Pleading, but not as against the answers to the second counterclaim and the supplemental counterclaim therein. The Court granted default judgment in favor of DACA and against Defendants as to DACA's first third-party counterclaim, but not as to its supplemental counterclaim, and the Court solicited a proposed form of judgment from DACA. The Court dismissed DACA's second third-party counterclaim for appointment of a receiver. The Court granted offensive summary judgment to DACA's on its Fourth-Party Complaint as against Palisades Capital (NV) LLC, but denied it as against Pond or Merjan. The Court denied offensive summary judgment to DACA on its supplemental third-party counterclaim against

Defendants. The Court granted in part and denied in part defensive summary judgment to DACA as against Defendants' second third-party claim for declaratory judgment. The Court granted defensive summary judgment to DACA as against Defendants' seventh third-party claim for slander of title.

Plaintiffs asked the Court to dismiss Defendants' counterclaims as against Plaintiffs. The Court granted the motion. DACA has now asked the Court for summary judgment in several respects.

## II.     SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an

element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. See Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. See *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. ANALYSIS**

DACA first asks the Court to grant it offensive summary judgment on its counterclaim for declaratory relief against Defendants that: (1) the nonjudicial foreclosure under the deeds of trust on the Castaic and Castaic II properties, including the respective trustee's sales on

1    November 13 and 16, 2012, were valid; (2) Defendants have no right to rescind or set aside the

2    foreclosures; and (3) Defendants have no interests in the Castaic or Castaic II properties by virtue

3    of their succession to any interest of any direct lenders.

4         DACA notes that the Court has already ruled in this case that the deeds of trust are

5    enforceable, (*see* Order 9:19–20, ECF No. 170), and that the then-impending foreclosures were

6    proper, (*see id.* 9:20–21). The Court agrees that these issues are settled, i.e., that the deeds of

7    trust are valid and that foreclosures were therefore generally appropriate. The potential

8    remaining issue is whether the foreclosures were in fact carried out pursuant to California law.

9    DACA has adduced the two trustee's deeds as evidence of the completed trustees sales and notes

10   that the trustee's sales give rise to a rebuttable presumption of the validity of the foreclosure sale

11   under California law. *See* Cal. Civil Code § 2924(c); *Stevens v. Plumas Eureka Annex Mining*

12   *Co.*, 41 P.2d 927, 928 (Cal. 1935) ("[T]he recital in the deed from trustee to purchaser at the sale,

13   coupled with the other facts in the record, is sufficient to show prima facie that the trustee duly

14   gave notice of sale as required by law and the provisions of the trust deed under the terms of

15   which the sale was had."). Recitations of compliance with applicable foreclosure laws appear in

16   the trustee's deeds in this case. (*See* Castaic Trustee's Deed, ECF No. 337-4, at 62; Castaic II

17   Trustee's Deed, ECF No. 337-4, at 72). DACA notes that under California law, an equitable

18   action by a mortgagor to set aside a foreclosure, even where illegality of the foreclosure can be

19   shown, requires that the mortgagor tender the amount in default, which Defendants have never

20   claimed here. *See Lona v. Citibank*, 134 Cal. Rptr. 3d 922, 633 (Ct. App. 2011). DACA also

21   notes that Defendants have admitted having no direct lender interests in the Castaic loans. (*See*

22   Supplemental Responses to Interrogatories Nos. 5 and 9, 3:21–22, 5:2–4, ECF No. 337-6, at 8,

23   10). The Court finds that DACA has satisfied its initial burden to show that there is no genuine

24   issue of material fact as to its requested declarations.

25        In response, Defendants first argue that the motion for summary judgment should be

denied because DACA filed no separate statement of undisputed facts under "Local Rule 7056." Defendants presumably mean to refer to Local Rule of Bankruptcy Practice 7056(a). That rule applies only to adversary proceedings. Although jurisdiction in this case is based in part on relation to a bankruptcy case under 28 U.S.C. § 1334(b), the present case is not in fact an adversary proceeding under the Bankruptcy Code but a "regular" civil case. Local Rule of Civil Practice 56-1 requires no separate statement of undisputed facts. Next, Defendants argue the foreclosure sales are void, but they adduce no evidence in support. The only evidence adduced in opposition are Barkett's and Carrie Rowell's brief declarations consisting of irrelevant claims and legal conclusions. There is no evidence of any irregularity in the foreclosure sales. The Court rejects Defendants' arguments that DACA was not permitted to foreclose because it did not have a 100% beneficial interest in the loan. The Court has already ruled that DACA had the right to foreclosure under Nevada's 51% rule. Any minority lenders retain their right to a pro rata share of the proceeds of the foreclosure, but it only takes 51% to make the decision to foreclose. Finally, Defendants point to, but do not produce, an alleged declaration in a bankruptcy case in another district wherein Barkett has attested that either he or entities of which he is the managing member have acquired some beneficial interest in the Castaic and Castaic II deeds of trust. Because the claim of ownership is in the alternative (the alternative being that some entity separate from Barkett has the alleged interest), it would not create a genuine issue of material fact even if it were adduced. Nor is the declaration alleged to indicate that Barkett or others apart from DACA in fact own more than 49% of the interest in any of the loans, which would be the only way for that single piece of evidence to create an issue of material fact that DACA did not have the right to foreclose without one or more other parties' consent. Defendants have not satisfied their shifted burden on summary judgment.

Second, DACA asks the Court to grant it offensive summary judgment on its fourth-party claims for declaratory relief against Pond, Merjan, and Palisades that: (1) the nonjudicial

foreclosure under the deeds of trust on the Castaic and Castaic II properties, including the respective trustee's sales on November 13 and 16, 2012, were valid; (2) Forth-Party Defendants have no right to rescind or set aside the foreclosures; and (3) Fourth-Party Defendants have no interests in the Castaic or Castaic II properties by virtue of their succession to any interest of any direct lenders. The Court grants the motion in this respect. DACA has carried its initial burden on summary judgment on these issues as against any potential objector to the foreclosure, as noted, *supra*, and no Fourth-Party Defendant has responded to attempt to satisfy its shifted burden.

Third, DACA asks the Court to grant it defensive summary judgment against all of Defendants' third-party claims. DACA notes that the Court has already granted it defensive summary judgment as against the second and seventh third-party claims, (*see* Order, ECF No. 317), and although it believes the other third-party claims do not apply against DACA, it brings the present motion for defensive summary judgment against those claims "in an abundance of caution." The Court agrees with DACA's analysis that: (1) the first third-party claim for beach of contract is against Compass as the successor service to USA Commercial; (2) the third third-party claim for interference with prospective economic advantage relates to conduct by those two entities; (3) that the fourth third-party claim for usury is necessarily without merit because, as the Court has stated, Nevada has no usury law; (4) the fifth third-party claim for breach of fiduciary duty expressly applies only against Compass; and (5) the sixth third-party claim for unjust enrichment relates only to fees and charges by Compass. Defendants present no substantive arguments in response. The Court therefore grants summary judgment.

Finally, DACA asks the Court to enter final judgment on all claims by and against DACA. The Court grants the request and shall separately enter the Proposed Judgment (ECF No. 331) attached to DACA's motion. Defendants object that the Proposed Judgment would strip minority direct lenders of their interests in the Castaic loans because it would state that the 51%

rule permits the assignment of 100% of the interest in fractionalized notes and security instruments upon the consent of 51%. Not so. The 51% rule is not a rule whereby 51% of the owners of the beneficial interest in a loan may assign to themselves the beneficial interests of the minority. This Court has never so ruled, and no party before the Court, including DACA, has ever so argued. The language of the Proposed Judgment is consistent with the law and makes clear that DACA will be the "sole beneficiary of record" under the deeds of trust, but not that it will be the sole beneficiary of the loans. In fact, it makes clear that DACA will be a fiduciary for the minority interest-holders in the Castaic loans, who remain entitled to their pro rata shares of the proceeds of any recovery on those loans. That is consistent with the 51% rule, which prevents minority interest-holders from frustrating action on a loan while protecting their equitable interest in the loan upon a decision by the majority interest-holders to pursue an action.[2]

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 331) is GRANTED.

IT IS SO ORDERED.

Dated: This 5th day of January, 2015.

_____
ROBERT C. JONES
United States District Judge

---

[2] The 51% rule technically requires a supermajority to act. A majority is anything greater than 50%, e.g., 50.1%. The distinction does not present itself in this case.