# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

THE RICHARD AND SHEILA J. MCKNIGHT )
2000 FAMILY TRUST et al., )
  )
        Plaintiffs, )
  )    2:10-cv-01617-RCJ-GWF
vs. )
  )    **ORDER**
WILLIAM J. BARKETT et al., )
  )
        Defendants. )
  )

This is a complex breach of guaranty case related to the USA Commercial bankruptcy. The procedural history of the case is complex, and the Court will only recount it in relevant part. Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment. The Court dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs against Barkett and Castaic III and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II"). One group of intervenors (the "Rasmussen Intervenors") filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment. (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61). The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned the Castaic entities. (*See id.* ¶¶ 5, 67–69). In 2013, the Court struck Barkett's answer to the Rasmussen CI, and the Clerk

entered default. Rasmussen Intervenors have now asked the Court for a default judgment against Barkett on the breach of guaranty claims totaling $2,738,000. The Court has reviewed the attached evidence, i.e., the guaranties Barkett signed as to the Castaic, Castaic II, and Castaic III loans and the exhibits to those guaranties listing the fractional interests of the respective direct lenders, and the evidence appears to support the requested judgment.

In opposition, Barkett argues that such a judgment will not settle the claims of all direct lenders or even the claims of all Rasmussen Intervenors. He also makes arguments as to his Rasmussen Intervenors' entitlement to payment under the Guaranties. Specifically, he argues that more than 51% of the direct lender interests voted to transfer their interests in the Loans to another entity, who then foreclosed. He argues that it is not clear the non-consenting direct lenders retain any interest. But the Court has been clear—and it reiterates now—that non-consenting beneficiaries cannot be forced to transfer their interests in a loan or security therefore, and they retain their fractional interests in notes and security instruments upon a transfer of other parties' interests to a new party. The 51% rule has nothing to do with forcing a transfer of anyone's interest in a loan; it simply requires 51% ownership to make decisions as to the disposition of the property itself or modification of the loan. *See* Nev. Rev. Stat. § 645B.340(1). Non-consenting fractional owners retain their interests except to the extent all owners' interests may be affected pro rata upon some event determined by the 51%, e.g., foreclosure, transfer or encumbrance, trade of a loan obligation for equity, or loan modification. *See id.* § 645B.340(1)(b)–(e). Upon a foreclosure, as here, minority direct lenders of course lose their security interest in the property just as the majority does, but they still have a right to payment of a pro rata amount of the foreclosure proceeds in accordance with their fractional interests in the note, and they also retain their fractional interests in any guaranties, which naturally exist for the purpose of making the direct lenders whole should the borrower default and a subsequent foreclosure fail to make the direct lenders whole. There has never been any serious question that

non-consenting direct lenders retained their interests in the Loans and Guaranties whether or not the majority interest was transferred to Castaic Investors, LP, DACA Castaic, or any other entity.

In essence, Barkett argues, "What is left undecided is what interest those Direct Lenders who did not affirmatively vote in favor of the 'Agreement to Purchase Loan Interests' or those Direct Lenders who did not vote at all retained." (Opp'n 3:21–23 (citing Order, ECF No. 324)). That is not left undecided. As noted, *supra*, the Court has been clear on this question. Nor does the cited order leave any doubt. In that Order, the Court dismissed Barkett's counterclaims because he no longer owned them. In doing so, the Court simply noted that Barkett's argument in opposition that the issue of non-consenting direct lenders' interests had not yet been determined was irrelevant to the motion before it. Barkett adduces no evidence here that any of the direct lenders now seeking a default judgment in fact transferred their interests in the Loans to any other entity.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Default Judgment (ECF No. 410) is GRANTED, and Movants shall SUBMIT a proposed form of judgment.

IT IS SO ORDERED.

DATED: This 8th day of March, 2016.

_____
ROBERT C. JONES
United States District Judge