**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE RICHARD AND SHEILA J. McKNIGHT 2000 FAMILY TRUST, Richard McKnight Trustee, | )<br>)<br>) |
| Plaintiff, | ) Case No.  2:10-cv-01617-RCJ-GWF |
| vs. | ) **ORDER** |
| WILLIAM J. BARKETT, an individual; CASTAIC PARTNERS II, LLC, | ) |
| Defendants. | ) |
| THOMAS J. KAPP AND CYNTHIA S. ROHER, TRUSTEES OF THE T. & C. KAPP FAMILY TRUST, | ) |
| Intervenor Plaintiff, | ) |
| vs. | ) |
| WILLIAM J. BARKETT, an individual; CASTAIC PARTNERS II, LLC, | ) |
| Intervenor Defendants. | ) |

This matter is before the Court on Daniel Newman's ("Mr. Newman") Motion to Disqualify Lisa Rasmussen (ECF No. 444), filed on March 23, 2016.  Lisa Rasmussen ("Ms. Rasmussen") filed a Response (ECF No. 451) on April 11, 2016 and Mr. Newman filed a Reply (ECF No. 460) on April 21, 2016.  Ms. Rasmussen filed a Sur-Reply (ECF No. 462) on April 27, 2016.  The Court conducted a hearing in this matter on April 28, 2016.

**BACKGROUND**

This is a breach of guaranty case related to the USA Commerical bankruptcy.  The procedural history of the case is complex, and the Court will only recount it in relevant part.

Plaintiff sued Defendants Castaic III and William J. Barkett in this Court on two claims: (1) Breach of Guaranty (Barkett only); and (2) Declaratory Judgment.  The Court dismissed the second cause of action for declaratory judgment, granted offensive summary judgment on the first cause of action for breach of guaranty, and permitted 260 other direct lenders to intervene as Plaintiffs against Barkett and Castaic III and to add claims against Castaic Partners, LLC ("Castaic" or "Tapia Ranch") and Castaic II Partners, LLC ("Castaic II").  One group of intervenors (the "Rasmussen Intervenors" or "Rasmussen Direct Lenders") filed a complaint in intervention (the "Rasmussen CI") against Barkett, Castaic, Castaic II, and Castaic III for breach of contract, breach of guaranty, and declaratory judgment.  (*See* Rasmussen CI, Aug. 8, 2011, ECF No. 61).  The Rasmussen CI alleges the amount each Rasmussen Intervenor loaned to the Castaic entities.  (*See id.* ¶¶5, 67–69). In 2013, the Court struck Barkett's answer to the Rasmussen CI, and the Clerk entered default.  The Rasmussen Intervenors subsequently asked for, and the Court granted, a default judgment against Barkett on the breach of guaranty claims totaling $2,738,000.  *See* ECF No. 437.  On April 14, 2016, the parties reported that they are still engaged in settlement negotiations.  *See* ECF No. 456. The trial in this matter is currently set for July 11, 2016, with the calendar call being held on June 29, 2016.  *See* ECF No. 459.

Mr. Newman is a direct lender and was, from approximately May 11, 2010 until October 5, 2015, personally represented by Ms. Rasmussen.  Mr. Newman was also the board chair for Castaic Investors, LLC — another client of Ms. Rasmussen.  After obtaining new counsel, Mr. Newman now asserts that Ms. Rasmussen's continued representation of the Rasmussen Direct Lenders runs afoul of the Nevada Rules of Professional Conduct 1.9 and 1.7.  Specifically, Mr. Newman argues that Ms. Rasmussen should be disqualified because Mr. Newman's interests are materially adverse to that of Ms. Rasmussen's current clients and there is no evidence of informed consent. Furthermore, Mr. Newman argues that disqualification is warranted because Ms. Rasmussen has a concurrent conflict of interest between her clients Castaic Investors, LLC and the Rasmussen Direct Lenders.

In opposition, Ms. Rasmussen responded as follows:

(a) the undersigned represents over 165 direct lenders and she does not advise any of

2

them how to vote on matters that require a 51% majority vote under NRS Chapter 645B (nor has she ever), (b) that the undersigned was retained to defend the direct lenders in litigation commenced by Barkett and to pursue claims on the guarantees executed by Barkett, (c) that disqualifying the undersigned from those efforts harms the direct lenders, (d) there are no confidential communications at issue regarding the prior Newman representation, (e) there is nothing that the undersigned is doing that is or was causing any economic or otherwise identifiable or known harm to Mr. Newman, in fact to the contrary, the undersigned's efforts were benefitting all direct lenders, including Mr. Newman and (f) this was likely nothing more than an effort to benefit DACA and Howard Justus by ensuring that the direct lenders are left without counsel at a time when they are trying to resolve the remaining litigation with Barkett in a manner that is perceived by DACA and Justus to be threatening to their interests.

*Response* (ECF No. 451), pg. 2, lns. 8–22. Ms. Rasmussen asserts that Mr. Newmans's conflict is something that he created by accepting compensation from DACA and Justus for his efforts to disqualify Ms. Rasmussen. In essence, Ms. Rasmussen argues that Mr. Newman, along with DACA and Justus, are engaging in champerty and maintenance and that the Court should not allow their efforts to prevail thereby leaving her current clients unrepresented and at a substantial disadvantage.

## DISCUSSION

Generally, motions to disqualify counsel are disfavored and are only granted when necessary. *Switch Comm's Grp. v. Ballard*, 2011 WL 3859725, *2 (D. Nev. Aug. 31, 2011) (citing *United States v. Titan Pacific Constr. Corp.*, 637 F.Supp. 1556, 1562 (W.D. Wash. 1986)). "Courts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice. *See Hull v. Celanese Corp.*, 513 F.2d 568, 570 (2d Cir.1975)." *Brown v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 116 Nev. 1200, 1205, 14 P.3d 1266, 1269–70 (2000). "While doubts should generally be resolved in favor of disqualification, *see Cronin*, at 640, 781 P.2d at 1153; *Hull*, 513 F.2d at 571, parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay. *See Flo–Con Systems, Inc. v. Servsteel, Inc.*, 759 F.Supp. 456, 458 (N.D. Ind.1990)." *Id; Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (finding that "particularly strict judicial scrutiny" should be given to motions to

disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage).

"When considering whether to disqualify counsel, the district court must balance the prejudices that will inure to the parties as a result of its decision. *Cronin*, 105 Nev. at 640, 781 P.2d at 1153." *Id.* A party seeking disqualification "must first establish 'at least a reasonable possibility that some specifically identifiable impropriety did in fact occur,' and then must also establish that 'the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case.' *Id.* at 641, 781 P.2d at 1153 (quoting *Shelton v. Hess*, 599 F.Supp. 905, 909 (S.D. Tex.1984))." *Id.*

Attorneys admitted to practice before this court must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." Local Rule (LR) IA 11–7(a); *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (applying state law to determine issue of disqualification). Rule 1.9(a) of the Nevada Rules of Professional Conduct governs a lawyers duties to former clients. It provides that a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. Rule 1.7 provides that a lawyer may not represent a client if a concurrent conflict of interest exists. A concurrent conflict exists when the representation of one client is directly adverse to another client or when representation of a client materially limits the lawyer's responsibilities to another client or former client.

Mr. Newman asserts that Ms. Rasmussen is in violation of Rule 1.9 for two reasons. First, Mr. Newman represents that his interests are directly adverse to the Rasmussen Direct Lenders with regard to Barkett's Application for Declaratory Relief, filed in the bankruptcy case *In re Asset Resolution, LLC*. Specifically, the Rasmussen Direct Lenders filed a response supporting Barkett's application, while Mr. Newman filed a joinder to DACA's Objection to the same. Second, Mr. Newman asserts that in that response, Ms. Rasmussen's clients pointed to Mr. Newman's conduct,

4

1  which they argue was allegedly without authority, bordered on securities fraud, and constituted
2  grounds to unwind the formation of the joint venture and Castaic Investors, LLC. *Motion* (ECF
3  No. 444), pg 11. Ms. Rasmussen, on the other hand, insists that her clients interests are not
4  materially adverse to Mr. Newmans and that his arguments for the same are wholly without merit.
5  The Court agrees. Mr. Newman's assertion that Ms. Rasmussen's clients hold materially adverse
6  interests than his is simply unpersuasive. Rather, it appears that Mr. Newman's interests are
7  generally aligned with that of Ms. Rasmussen's clients because he is also a direct lender.
8  Furthermore, Ms. Rasmussen's clients are not asserting claims against Mr. Newman in the instant
9  lawsuit.[1]

10  Mr. Newman also argues that Ms. Rasmussen is in violation of Rule 1.7 because she
11  represents the Rasmussen Direct Lenders who fall into multiple categories and whose interests may
12  diverge and are generally incompatible. In addition, Mr. Newman argues that a conflict exists
13  between Ms. Rasmussen's representation of the Rasmussen Direct Lenders and Castaic Investors,
14  LLC because she, on behalf of the Rasmussen Direct Lenders, has asserted claims against Castaic
15  Investors, LLC's continued existence and propriety of its conduct during its lifetime. Ms.
16  Rasmussen responds by explaining that the actions taken by the Rasmussen Direct Lenders are
17  based on of a majority vote, and all of the Rasmussen Direct Lenders are aware that unanimity
18  cannot be expected. She further asserts that she plays no role in the voting process. Again, the
19  Court finds that Mr. Newman's arguments are unpersuasive. The Court recognizes that based on
20  the volume of clients Ms. Rasmussen represents there is the potential for conflicting views and
21  interests. However, on balance, the Court finds that disqualification is not warranted in this
22  instance. Were the Court to disqualify Ms. Rasmussen, numerous parties would be left without
23  representation and with a slim chance of finding replacement counsel. The Court is unwilling to do
24  so as the resulting prejudice to the Rasmussen Direct Lenders would be substantial. Moreover, it is
25  quite telling that of the approximately 165 Rasmussen Direct Lenders represented by Ms.

---

[1] Ms. Rasmussen conceded that she would be unable to represent her current clients in any dispute against Mr. Newman. However, no one has sued, made a claim, or threatened a claim against Mr. Newman. *Response* (ECF No. 451).

Rasmussen, Mr. Newman is the only one who has sought disqualification.  Of course, if even one client raised a serious conflict of interest issue, that might be enough to warrant disqualification. However, as discussed herein, Mr. Newman's arguments do not rise to the level of seriousness to deprive approximately 165 other clients of representation this close to trial and while the parties are attempting to negotiate a resolution. Accordingly,

**IT IS HEREBY ORDERED** that Daniel Newman's Motion to Disqualify Lisa Rasmussen (ECF No. 444) is **denied**.

DATED this 10th day of June, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge